(No. 22384.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESLIE KIDD *et al.* Plaintiffs in Error.

*Opinion filed June 20, 1934.*

FRANK J. TYRRELL, (JOHN M. LONERGAN, of counsel,) for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

At the July, 1929, term of the criminal court of Cook county, Leslie Kidd and Anthony DeLordo were indicted for an assault upon James Kelly, a police officer, during a hold-up at the office of the Wanzer Dairy Company. At the same term they were indicted for armed robbery of

the dairy company. They were duly arraigned under both indictments and entered pleas of not guilty. They were tried and convicted of robbery but were not tried on the other charge at that time. The judgment of conviction was reversed and the cause remanded by this court at the October, 1932, term. (*People* v. *DeLordo,* 350 Ill. 148.) The defendants were again tried at the July, 1933, term of the criminal court on the robbery charge and acquitted. After the first trial, but before the judgment was reversed, the indictment for assault was stricken on motion of the State's attorney, with leave to re-instate. This indictment contains three counts, one of which charges an assault with intent to commit murder. The other two counts charge an assault with a deadly weapon with intent to inflict great bodily injury. At the December term, 1932, on motion of the State's attorney, the cause was re-instated. A motion to quash the indictment and a plea of *autrefois acquit* were overruled. The defendants were tried in October, 1933, and found guilty of assault with intent to commit murder. Judgment was entered on the verdict, and the defendants have prosecuted a writ of error to review that judgment.

The plea of *autrefois acquit* alleged that the charges of robbery and assault are based on the same facts; that the acquittal on the robbery charge is a bar to the prosecution for assault, and that such a prosecution would twice put the defendants in jeopardy for the same offense, contrary to the State and Federal constitutions. It is now urged that the court erred in overruling the plea; that the constitutional right of the defendants to a speedy trial has been violated; that the court erred in re-instating the cause in the absence of the defendants; that the court was without authority to re-instate the cause after the term had passed at which it was stricken from the docket; that the conviction is erroneous because the defendants were not arraigned and did not plead after the cause was re-instated; that improper evidence was admitted and proper and ma-

terial evidence rejected, and that the evidence fails to establish the guilt of the defendants beyond a reasonable doubt.

It is evident that the defendants could not have been convicted under the robbery indictment of an assault to commit murder. Both crimes may have been committed by the same persons, but an acquittal of the robbery charge is not a bar to the prosecution upon the charge of assault. (*Nagel* v. *People*, 229 Ill. 598; *People* v. *Stephens*, 297 id. 91; *People* v. *Andrae*, 305 id. 530.) The plea was properly overruled.

When the cause upon the assault charge was stricken from the docket no bail was required of the defendants. When it was re-docketed bail was fixed and a *capias* ordered to issue. The defendants were not in custody from the time they were acquitted of robbery until the *capias* on the assault charge was issued and served. In *Guthmann* v. *People*, 203 Ill. 260, we held that, in harmony with the constitutional provision for speedy trial, the statutory period fixed for discharge of a prisoner who has not been tried runs from the date of commitment by a magistrate and not from the date of the indictment. The decision in that case is based upon the doctrine that the evil intended to be prevented is wrongful incarceration rather than wrongful accusation. The right to a speedy trial means the right to have speedily heard the charge upon which the accused is detained, and that this constitutional provision is based on the right of an individual to be at liberty. (*People* v. *Klinger*, 319 Ill. 275.) Inasmuch as the defendants were not detained until the *capias* was issued their right to a speedy trial was not invaded.

Under the bill of rights (const. of 1870, art. 2, sec. 9,) the defendants were entitled to a public trial by jury and to be present at every stage of it in which they had a right to participate for their protection. (*People* v. *McGrane*, 336 Ill. 404; *People* v. *Beck*, 305 id. 593.) But it is not required that a defendant be present in person at the filing

or hearing of preliminary motions not involving substantial rights. (8 R. C. L. "Crim. Law," sec. 49; Wharton on Crim. Pl. & Pr. (8th ed.) sec. 548.) The docketing of a cause is not a part of a trial any more than the return of an indictment. The effect of striking a cause from the docket is that it cannot be tried until it is again placed on the docket. Its status is not otherwise changed. Redocketing cannot affect the rights of an accused any more than the original docketing. The purpose of the constitutional provision is to protect the citizens in every substantial right, but it was never designed to prescribe such inconsequential details of procedure as would hamper the administration of justice. It was not necessary that the defendants be present when the cause was re-docketed.

There was no error in re-docketing the cause after the term at which it was stricken. The order striking it with leave to re-instate justified the clerk in omitting the cause from the dockct, but the indictment remained undisposed of. The cause might again be placed on the docket and the defendant brought to trial upon the same indictment. An order to strike with leave to re-instate excludes the conclusion that the case is at an end. It implies that it is still subject to the action of the court. (*Blalock* v. *Randall,* 76 Ill. 224; *Tibbs* v. *Allen,* 29 id. 535.) In *People* v. *Hill,* 350 Ill. 129, we held that the re-docketing of a stricken cause where the indictment had been returned almost five years previously was neither unusual nor unlawful. The practice has obtained in this State for upwards of a century. (*Tibbs* v. *Allen, supra.*) .What is here said answers the contention that the defendants should have been again arraigned after the cause was re-docketed. They were once arraigned, and, the cause being still pending, a second arraignment was unnecessary.

On June 9, 1929, between 10:30 and 11:00 o'clock A. M., James Kelly, a South Park police officer, was called to the offices of the Wanzer Dairy Company, on Garfield boule-

vard, in Chicago. The offices are located on the second floor and there is a front and a rear entrance. A cashier's cage is in the northeast corner and private offices are at the south end of the main office. Officer Kelly entered through the rear entrance to the offices. As he came in, two men started to shoot at him and fired seven or eight shots. Prior to the shooting their caps were pulled down to the tips of their noses and were pushed up from their faces as the shooting started. Kelly backed into a private office and the two men who did the shooting ran out the front way. The men were in the office five or ten minutes before Kelly entered. There were a number of employees in the offices during the hold-up.

Upon the trial the defendants were identified by officer Kelly and by Walter Tucker, Herman Meyers and Herbert Bergfelt, three employees of the dairy company. Kelly testified that he was not so sure of his identification of DeLordo as he was of Kidd's. About a month after the crime the defendants were placed in a "show-up" at the detective bureau in Chicago. At that time none of the employees identified either of the defendants. Bergfelt testified that he was too far back to be positive. The defendants were taken to the dairy company's office the next day by police officers, where they were identified by said witnesses.

The defense is an alibi. Kidd testified he was employed by Harry Olsen at a service station; that on the day of the attempted ·robbery (Sunday) he arose about 6:30; that he received a phone call from his sister and went over to her house, on West Sixty-eighth place, about 7:15 and remained there until 8:15 or 8:30; that he went from there to Fairmont Cemetery at his father's request, taking with him two wreaths, one of which he put on his mother's grave and the other on that of his sister's baby, and that he then drove back to his father's home and arrived there about 11:30. His sister testified to substantially the same

facts. His employer testified he talked to Kidd over the telephone that morning.

DeLordo testified that on the morning of the crime he arose at 9:15, had breakfast, and went to 10:00 o'clock mass at St. Mary's Mt. Carmel, at Sixty-seventh and Hermitage streets; that he went to church alone and after leaving church went home about 11:05; that at noon he went to Lake Michigan beach, near Benton Harbor, Michigan, arriving between 3:30 and 4:00 o'clock, and stayed there until the following Thursday. James Fish, his half-brother, his wife, Margaret Fish, and Joseph DeGeorge, testified that they saw him at the 10:00 o'clock mass on the day of the crime. Two witnesses testified to the good reputation of the defendants as law-abiding citizens.

The identifications of the defendants made at the dairy company's office are criticised because the defendants were brought into the office handcuffed and the employees were previously informed of the purpose. It is said that an identification under such circumstances cannot be given the same credit as where the witness picks out the accused from a number of unknown persons. *People* v. *Crane,* 302 Ill. 217, is cited in support of that contention. It is true that such an identification may not be entitled to the same weight as where the witness has picked out the defendant from a number of persons unknown to him, but the circumstances surrounding the identifications in this case are dissimilar to those in the *Crane case.* In that case the witnesses were children and were shown to have been so coached as to influence their identification of the defendants. Here the witnesses were adults and under no influence to make an unwarranted charge. The weight of their testimony was for the jury, and we will not disturb its finding unless we are convinced of its error. The *Crane case* cannot be construed to hold that an identification of a person under arrest may never be relied on as safely as if the prisoner was not in custody. The dependability

of an identification rests on a variety of circumstances, including the credibility of the witness and his opportunity to observe the accused at the time of the commission of the crime as well as at the time of the identification. So far as the testimony of the witnesses in this case is concerned, it was positive and appears to be entitled to convincing force.

Kidd testified he left his sister's house at 8:15 or 8:30 on the morning of the crime; that it took him about a half hour to go to the cemetery, which was fifteen or eighteen miles away, and somewhat longer to get back, and that he stayed at the cemetery an hour or an hour and a half. If he stayed there only an hour he could have returned to his sister's home in time to have participated in the crime. None of the witnesses who testified to seeing DeLordo at mass said they saw him as late as 11:00 o'clock. The jury did not accept the evidence concerning the defense of alibi as convincing. This court will reverse a conviction on the evidence only when it is able to say, after careful consideration of the whole testimony, that there is clearly a reasonable and well founded doubt of the guilt of the accused. (*People* v. *Greenberg,* 302 Ill. 566.) The record appears to disclose sufficient credible testimony to warrant a conviction, and the verdict is not palpably contrary to the weight of the evidence. We are unwilling to substitute our judgment for that of the jury upon such a record. *People* v. *Buzan,* 351 Ill. 610; *People* v. *Chaney,* 342 id. 175.

Complaint is made because certain testimony was admitted which related, in a measure, to the alleged robbery. The only testimony not stricken which mentioned the robbery was that of Herman Meyers, who testified that before Kelly came in a man pointed a gun at him and said, "Get in line with the rest of them." This was not objected to and the defendants are in no position to complain of it. However, the two crimes were committed in the same trans-

action and were so directly connected that the proof was in some respects inseparable. The testimony showing that the defendants were armed characterized the assault. The People were not estopped by the former acquittal to prove any of the facts connected with the crime charged in the case on trial although similar evidence was introduced in the former trial. *Nagel* v. *People, supra.*

No error was committed in refusing to admit proof of the acquittal of the defendants of the charge of robbery. That judgment could not be pleaded in bar of the indictment for assault, as it would not tend to prove any triable issue.

We find no reversible error in the record, and the judgment of the criminal court is affirmed.

*Judgment affirmed.*