Edward A. GREGORY,
Plaintiff-Appellant,

v.

Fred WYSE, Warden, Colorado State
Penitentiary, et al.,
Defendant-Appellee.

Reverend John David CONTI,
Plaintiff-Appellant,

v.

Fred WYSE, Warden, Colorado State
Penitentiary, et al.,
Defendant-Appellee.

No. 73–1405.

United States Court of Appeals,
Tenth Circuit.

March 11, 1975.

John C. Guadnola, Denver, Colo., for plaintiffs-appellants.

John P. Moore, Atty. Gen., John E. Bush, Deputy Atty. Gen., and Richard G. McManus, Jr., Asst. Atty. Gen., for defendants-appellees.

Before MURRAH, SETH and BARRETT, Circuit Judges.

MURRAH, Circuit Judge.

 This consolidated appeal is from separate judgments sustaining motions to dismiss civil rights actions (42 U.S.C. § 1983, 28 U.S.C. § 1443) by inmates of the Colorado penitentiary against responsible state administrators. We know, of course, the complaints should not be dismissed for failure to state a claim unless it appears beyond doubt that the complainants can prove no set of facts in support of their claims which would entitle them to relief. And where, as here, there are substantial allegations of violations of constitutional rights in the treatment of state prisoners, the complaint must be considered on

its merits by proper hearing. Ordinarily, we should remand these cases for the development and consideration of the facts in accordance with applicable procedures. See Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Black v. Warden, 467 F.2d 202 (10th Cir. 1972). However, upon the filing of pro se petitions in these cases, the trial court immediately appointed counsel who filed amended complaints pleading the operative facts with elaborate specificity. Each of the complaints undertake to state three separate claims on identical facts for the deprivation of in-prison procedural due process and to recover the same money damages (both compensatory and punitive) and the same injunctive relief. In these circumstances, we shall take the cases on the pleaded facts to determine if they state a claim on which relief can be granted under any legally supportable theory.

While both Gregory and Conti were inmates of the Colorado penitentiary system, Gregory escaped from custody on or about July 2, 1972, and was returned to the penitentiary on August 11, 1972. Conti escaped on May 20, 1972, and voluntarily returned to the penitentiary on June 7, 1972. Upon their return, they were stripped, sprayed and confined in the maximum security portion of the penitentiary for at least ten days, a substantial portion of which was spent in solitary confinement twenty-four hours a day in a cell six feet square, provided only two meals per day, one shower per week, forced to sleep on a cement slab with no bedding, with a light in the cell twenty-four hours a day, and were deprived of all privileges normally afforded the prison population, including cigarettes. Four or five days after their return, they were each called before the prison Administrative Adjustment Committee. Upon a hearing, the committee determined that the inmates had in fact escaped and ordered that both inmates should:

"(i) forfeit all good time heretofore earned,

(ii) be ineligible for parole or discharge for two years, during which two year period they were not to be permitted to leave the penitentiary under any circumstances,

(iii) be ineligible to earn any additional good time during that two year period, and

(iv) forfeit all normal prisoner's pay and all privileges of the general prison population for 90 days from the date of the order."

The contention is that "the hearing" was conducted in such a way that neither of them was afforded any meaningful opportunity to object in his own behalf, present witnesses, question the personnel upon whose reports the committee relied, or obtain a record, the assistance of counsel or the compulsory process of witnesses. They contend that the determination that an escape had occurred amounted to a finding that a felony had been committed in violation of Colorado law, for which they were entitled to jury trial; that the deprivation of earned good time and eligibility for parole for two years had the effect of increasing their sentences despite the fact that their guilt had never been properly determined.

In sum, as we read the complaints, they allege and contend (1) that the solitary confinement amounted to cruel and unusual punishment, (2) that the deprivation of their statutory prisoners' rights was done without affording minimum procedural due process, and (3) they are therefore entitled to (a) a judgment for compensatory and punitive damages, (b) an order enjoining the defendants and their agents from enforcing any punishment found by the court to have been imposed in violation of their constitutional right to due process, and (c) an order requiring the defendants to present to the court for its approval proposed standards and regulations to govern in-prison disciplinary procedures to insure minimum procedural due process for the determination of in-prison violations and the imposition of authorized penalties therefor.

At the outset, it is well to point out that since the commencement of these cases and the decisions of the trial court, it has been authoritatively decided that habeas corpus with concomitant exhaustion of state remedies is the sole remedy for the withholding or forfeiture of good time credits, insofar as it affects the "fact or length of his confinement." See Preiser v. Rodriguez, 411 U.S. 475, 494, 500, 93 S.Ct. 1827, 1838, 36 L.Ed.2d 439 (1973); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Rodriguez v. McGinnis, 456 F.2d 79 (2d Cir. 1972). So, the restoration of good time credits and eligibility for parole are not within the scope of this proceeding. But this jurisdictional limitation in no way affects the availability of § 1983 to grant money damages and appropriate equitable relief for the deprivation of in-prison procedural due process. See Preiser, 411 U.S. at 494, 498, 93 S.Ct. 1827; Wolff, 418 U.S. at 553–555, 94 S.Ct. at 2973–2974.

Also since the judgments were entered in these cases, the Supreme Court in Wolff, supra, has promulgated elaborate and flexible standards to provide an in-prison species of due process for achieving "a reasonable accommodation between the interests of the inmates and the needs of the institution." See Wolff v. McDonnell, supra, at 572, 94 S.Ct. at 2982; and see also Palmigiano v. Baxter, 487 F.2d 1280 (1st Cir. 1973); and Sands v. Wainwright, 357 F.Supp. 1062 (M.D.Fla.1973). Colorado concedes that the procedures employed in these cases do not measure up to the standards established in Wolff. But Wolff is prospective only and the procedural due process requirements in these cases must therefore be judged according to pre-Wolff law on which there has been considerable contrariety. See Wolff, 418 U.S. page 572, n. 20, 94 S.Ct. page 2982.

While this court has been reluctant, perhaps more so than other courts, to interfere with in-prison disciplinary proceedings, we have consistently recognized that when a convicted person enters a prison he does not leave all of his constitutional rights behind. ". . . [W]e have never turned a deaf ear to a bona fide claim for relief based upon the deprivation of a constitutional right when asserted by federal or state prisoner, either in the nature of mandamus or habeas corpus proceedings or, as . . . a claim under the Civil Rights Act." See Bethea v. Crouse, 417 F.2d 504, 506, and cases cited there (10th Cir. 1969); Dearman v. Woodson, 429 F.2d 1288 (10th Cir. 1970).

In harmony with the generally accepted view, we have consistently held that solitary or disciplinary confinement is not per se cruel and unusual punishment. See Kostal v. Tinsley, 337 F.2d 845 (10th Cir. 1964); Graham v. Willingham, 384 F.2d 367 (10th Cir. 1967); Evans v. Moseley, 455 F.2d 1084 (10th Cir. 1972); Courtney v. Bishop, 409 F.2d 1185 (8th Cir. 1969); Sostre v. McGinnis, 442 F.2d 178, 190, and cases collected there (2d Cir. 1971). See also Annotation 51 A.L.R.3d 111, 161.

The question, then, is at what point does solitary or disciplinary confinement become cruel and unusual punishment and within the prohibition of the 8th and 14th Amendments when viewed against the historical background of the 8th Amendment case law. It seems fairly accurate to say that in-prison punishment becomes cruel and unusual when, in the language of Chief Justice Warren, it offends "the evolving standards of decency that mark the progress of a maturing society." See Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958); Justice, then Judge, Blackmun in Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968); Chief Judge Kaufman in Wright v. McMann, 387 F.2d 519, 525 (2d Cir. 1967) and 460 F.2d 126 (2d Cir. 1972); Anderson v. Nosser, 438 F.2d 183 (5th Cir. 1971), modified en banc 456 F.2d 835 (5th Cir. 1972); Sostre v. McGinnis, supra, at 190. See comprehensive treatment of the subject 51 A.L.R.3d 111.

Applying these concepts specifically to solitary confinement, the trial court

drew a clear distinction between the facts of these and other cases from this circuit and cases like Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Cal.1966), in which the court held, very properly we think, that confinement in a stripped cell for twelve days was cruel and unusual punishment because the cell was seldom cleaned of accumulated bodily waste and the inmate was kept naked and not provided with a bed, interior light, adequate heating, ventilation, furnishings, except a toilet flushed only from the outside, or soap and water for personal hygiene. See Wright v. McMann, supra; Jackson v. Bishop, supra; Anderson v. Nosser, supra; compare Sostre v. McGinnis, supra.

Agreeing with Fitzharris, the trial court was of the view that solitary confinement must be accompanied by "such essential requirements as may be necessary to maintain a degree of cleanliness compatible with elemental decency in accord with the standards of a civilized community." Fitzharris, supra 683. Compare Wright v. McMann, supra. In our case the court observed that the hard bed, cramped quarters, continuous light, and other restrictions were harsh, but "none of the conditions alleged constitute deprivation of basic care." And see Sostre v. McGinnis, supra. The court concluded that within these bounds the disciplinary measure was a matter for the warden in the exercise of his "judgment in the light of modern penological thought." We agree that the temporary solitary confinement in these cases did not amount to cruel and unusual punishment nor did it amount to denial of due process for which damages are recoverable under § 1983. See Sostre v. McGinnis, supra, at 190; Courtney v. Bishop, supra.

The Adjustment Committee found that the complainants did, in fact, escape, and there is no doubt of it. The complaints so allege, and Colorado statutes make it a felony, itself punishable by not less than one year or more than ten years. See C.R.S. 40–7–53 (1963). But it is not alleged nor does it appear that the complainants have been charged with the statutory crime.

The penalties imposed in these proceedings, though grievous to be sure, are not punishment in a criminal sense "but is rather an administrative disciplinary sanction imposed on a prisoner for breaking rules of the prison." Silva v. People, 158 Colo. 326, 407 P.2d 38, 40 (Colo.1965). In these circumstances due process does not require a trial type hearing. See Sostre v. McGinnis, supra, at 194 and cases cited there. Moreover, as we read the Colorado statutes, they mandate the most serious of the disciplinary sanctions imposed for these escapes. C.R.S. 105–4–6 (1963) expressly provides, "If any convict shall escape, or attempt to escape, from the penitentiary, he *shall* forfeit all deductions from the time of his sentence which he shall have earned under sections 105–4–4 and 105–4–5 . . . . The date of the return to the penitentiary, or apprehension of said convict, shall be a new starting point for the earning of all such good time, which shall thereafter be computed in the same manner as if said convict were then commencing to serve the first year of a new sentence. . . ." (emphasis ours).

C.R.S. 39–18–7(2) (1963) expressly provides that, "No prisoner confined in the state prison and no prisoner under sentence to the state prison who has escaped or attempted to escape from the prison or the guards may be paroled or discharged until he has served at least two calendar years from and after the date of his return to the prison, whether such two years extend beyond his maximum sentence or not, and during such two years such prisoner shall not be credited with any good time whatsoever."

We read these statutes to be self-executing and non-discretionary. Considered together, they seem to provide in substance and effect that an escapee forfeits all accrued good time, but commences to earn good time from the date of his return to the prison. He is not eligible for parole or discharge for at least two calendar years from the date

of his return, and the good time earned under 105–4–6 is not to be credited to him until the end of the two year period.[1] In the language of the Colorado Supreme Court, "It is the statutory scheme to grant prison inmates good-time credits for their conduct toward reduction of prison time to be served. C.R.S.1963, 105–4–4 and 105–4–7. As a corollary, good-time credits are forfeited for an escape or attempt to escape, as well as for other misbehavior. C.R.S. [1963], 105–4–6 and 105–4–8. An additional sanction is imposed for escape by the parole statute, C.R.S.1963, 39–18–7(2) . . . ." Lange v. Schauer, 520 P.2d 753, 755 (Colo.1974).[2]

C.R.S. 105–4–7(4) provides in material part that, "The warden may restore to the credit of any prisoner now or hereafter confined to the state penitentiary all or any portion of good time credits which have been forfeited . . . as a result of any disciplinary action or provision of law." C.R.S. 105–4–7 (1963, 1967 Supp.). But this section is prospective and in no way affects or conditions the forfeitures mandated under 105–4–6 and 39–18–7(2). As we have seen insofar as the operation of the statutes affect the duration of the sentences, they are cognizable only in habeas corpus and relevant here only as they bear upon the deprivation of procedural due process as a basis for money damages and appropriate injunctive relief, i. e. see supra, page 381. It is sufficient for due process purposes that the fact of escape having been administratively established, the penalties are self-executing and there can be no question of their constitutionality for they merely provide, in substance and effect, that a privilege granted for good conduct is automatically forfeited for misconduct.

 This leaves only the matter of forfeiture of normal prisoner's pay and all privileges of the general prison population for 90 days, and we certainly can not say that this amounts to the deprivation of a constitutional right for which damages are justifiable under § 1983.

The judgment is affirmed.

---

1. Ineligibility to earn any additional good time during the two year period as provided in (iii) (see page 380) is inconsistent with our interpretation of the statutes and to that extent may be unauthorized. However that may be ultimately settled, no § 1983 due process issue is presented here. The fact of escape having been established, the statute is self-executing without reference to a hearing. Inasmuch as the matter at hand ultimately affects the duration of the sentence, habeas corpus may lie, but in no event would any relief be grantable until the end of the two year period, under our interpretation of the statute. After that time, the necessity for the exhaus-

tion of remedies would bring the matter before the Colorado courts for authoritative interpretation of the relevant statutes. It should be noted that the state does not cite or rely on any of these statutes and we are therefore deprived of the benefit of the attorney general's opinion or interpretation. Chief Judge Arraj cites these statutes as authorizing the sanctions imposed here but apparently does not give them mandatory effect as we do.

2. In the Lange case the escapee was held unaccountable for the escape because of legal insanity and the statutory forfeitures were consequently inapplicable.