THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* CHARLES SMITH *et al.*, Defendants-Appellees.

Fifth District   No. 75-158

Opinion filed October 22, 1976.

G. J. MORAN, J., dissenting.

Herbert J. Lantz, Jr., State's Attorney, of Chester (Bruce D. Irish and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Stephen P. Hurley and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, and Lonzo Greenwood, law student, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants, Charles Smith and Lawrence Coleman, were indicted for the offense of aggravated battery. Each defendant filed a motion for discharge because of the lack of a speedy trial. The motions were originally denied but were later granted after a rehearing before a different judge. The State has appealed from the orders dismissing the charge against each defendant.

On September 18, 1974, defendants were inmates of the Illinois State Penitentiary, Menard, in Randolph County, Illinois. On that date, as two prison guards, Officer Everett Gray and Lieutenant D. Misselhorn, were attempting to walk defendant Smith from the prison dining hall to a segregation unit, both defendants allegedly struck Officer Gray. Several other prison guards then assisted and took both defendants to a segregation unit.

On September 20, 1974, a letter was mailed by the authorities at Menard to the State's Attorney of Randolph County notifying him of this incident and asking him to place charges against defendants. On December 17, 1974, the grand jury of Randolph County returned an indictment against each defendant for aggravated battery. Each of the defendants was brought before the court on January 2, 1975, for his initial appearance on the charge against him. Each defendant was presented with a copy of the indictment and separate counsel was appointed to represent each defendant. On February 13, 1975, defendant Smith filed a motion for discharge based upon the State's not having brought him to trial within 120 days pursuant to section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a)). Defendant Smith contended in this motion that the speedy trial statutory time period had begun to run on September 18, 1974,when he had been placed in segregation, and that the 120th day had been reached on January 17, 1975. Defendant Coleman filed an identical motion for discharge on February 18, 1975. The court held a hearing on both motions on February 24, 1975. The court then denied both motions but granted defendants leave to reinstate the motions at a later date if they could obtain more information with respect to the reasons for their having been placed in segregation. On March 5, 1975, a court calendar was filed which showed that the cases against defendants were to be tried during the week of March 30, 1975, or the week of April 7, 1975.

Both defendants filed a motion for substitution of judges on March 14, 1975. Thereafter, defendant Coleman, on March 21, 1975, and defendant Smith, on March 24, 1975, filed petitions for rehearing on the motion for discharge. The petitions for rehearing referred, *inter alia*, to the letter written by the prison authorities to the State's Attorney of Randolph County on September 20, 1974, and to the several reports of the various officers who had either witnessed the alleged incident or assisted in taking

defendants to the segregation unit. The petitions for rehearing pointed out that the several reports (which appear in the record on appeal) stated that defendants had been placed in segregation *to await prison disciplinary action* on the reports filed against them.

The petitions for rehearing were allowed; and on March 31, 1975, a rehearing on the motions for discharge was held before a different judge. The motions were allowed because defendants had not been brought to trial within 120 days of their being placed in segregation as a result of the alleged incident.

The State appeals pursuant to Illinois Supreme Court Rule 604(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)), and argues, first, that the applicable speedy trial statute was section 3—8—10 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—8—10), rather than section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a)). The State asserts, second, that even if section 103—5(a) of the Code of Criminal Procedure were the applicable statute, the 120-day period did not begin to run until the defendants were served with the indictments on January 2, 1975, and so the 120-day period had not expired when the defendants moved to dismiss the indictments.

■■ Since the first argument was not advanced by the People at the hearing on the motions to dismiss the indictments, this court could properly disregard this contention. (*People v. McAdrian*, 52 Ill. 2d 250, 287 N.E.2d 688.) If, however, the circuit court applied the wrong statute in determining whether the defendants were denied a speedy trial, it committed a plain error affecting the substantial right of the People to bring the defendants to trial within a longer period than that allowed by the circuit court. Noting the possible existence of plain error, this court, in the exercise of its discretion, will consider the People's argument that section 3—8—10 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—8—10), instead of section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a)), was the relevant speedy trial statute. See Ill. Rev. Stat. 1975, ch. 110A, par. 615(a); *People v. McAdrian.*

There are basically two statutory speedy trial provisions in Illinois. One specifies a 120-day period which begins to run automatically when a defendant is arrested and continuously held in custody for an alleged offense. Section 103—5(a) of the Code of Criminal Procedure sets forth this provision as follows:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an

adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal."

The second provision is applicable to a defendant who is arrested but then released on bail or recognizance rather than held in custody, and specifies a 160-day period which begins only when the defendant demands that he be given a speedy trial. Section 103—5(b) of the Code of Criminal Procedure contains this provision:

"Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal."

Section 3—8—10 of the Unified Code of Corrections incorporates section 103—5(b) by reference:

"* * * [S]ubsection (b), (c) and (e) of Section 103—5 of the Code of Criminal Procedure of 1963 shall also apply to persons committed to any institution or facility or program of the Illinois Department of Corrections who have untried complaints, charges or indictments pending in any county of this State, and such person shall include in the demand under subsection (b), a statement of the place of present commitment, the term, and length of the remaining term, the charges pending against him to be tried and the county of said charges, and the demand shall be addressed to the state's attorney of the county where he is charged with a copy to the clerk of that court and a copy to the chief administrative officer of the Department of Corrections institution or facility to which he is committed. The state's attorney shall then procure the presence of said defendant for trial in his county by writ of habeas corpus. Additional time may be granted by the court for the process of bringing and the execution of a writ of habeas corpus ad prosequendum. In the event that the said person is not brought to trial within the allotted time, then the charge for which he has requested a speedy trial shall be dismissed."

If section 3—8—10 of the Unified Code of Corrections applied to the charges of aggravated battery against the defendants, the People had to give the defendants a trial within 160 days of their demand for a speedy trial. The earliest action by the defendants which could be interpreted as such a demand was their filing motions to dismiss the indictments on the

ground that they had been denied a speedy trial. Moreover, the time required for disposition of the motions was delay caused by the defendants, and so could not be counted as part of the 160-day period. (*People v. Jones*, 130 Ill. App. 2d 769, 266 N.E.2d 411; *People v. DeStefano*, 85 Ill. App. 2d 274, 229 N.E.2d 325, *cert. denied*, 390 U.S. 997, 20 L. Ed. 2d 95, 88 S. Ct. 1197; Ill. Rev. Stat. 1975, ch. 38, par. 103—5(b).) Thus, if section 3—8—10 of the Unified Code of Corrections was the applicable statute, no part of the statutory period ever expired, and the defendants were not denied a speedy trial.

On its face, section 3—8—10 of the Unified Code of Corrections appears to apply to an offense committed by an inmate of an Illinois penitentiary during his term of imprisonment. Clearly when an inmate commits an offense in the penitentiary, he is a person "committed to" an "institution or facility * * * of the Illinois Department of Corrections who" has an untried complaint, charge or indictment pending in a county of the State of Illinois. Defendants, however, would have us construe section 3—8—10 "to apply only to persons who on the date of their commitment to the Department of Corrections from one county, have other untried charges pending in another county or counties."

We note that the language of section 3—8—10 does not expressly limit the application of the statute to charges pending at the time of defendant's commitment. If such a limitation had been intended by the legislature, it could have been easily accomplished by the insertion of the words "at the time of commitment" after the word "pending" in the first sentence of section 3—8—10. Absent such limiting language, the statute is clearly broad enough to cover the instant situation. Moreover, for this court to construe the statute in the manner urged by defendants, we would have to conclude that the legislature intended for an inmate who is accused of committing an offense while in the penitentiary to have the benefit of a more advantageous speedy trial provision than does an inmate accused of committing a separate but untried offense prior to his imprisonment.

The right to a speedy trial is based, at least in part, upon the right of an individual to be at liberty. (*People v. Kidd*, 357 Ill. 133, 191 N.E. 244.) Regardless of whether an inmate has committed an untried offense inside the prison walls or outside of the prison walls, he will nevertheless remain imprisoned because of the separate offense of which he was previously convicted. In that respect, his right to liberty is no greater in one situation than in the other. We can perceive of no valid reason why an inmate who has committed an untried offense while in prison should be subject to the 120-day rule, which requires no demand for a speedy trial, while an inmate who has committed an untried offense prior to imprisonment is subject to the longer speedy trial statute, which not only allows the prosecution an additional 40 days, but also imposes upon the accused the

burden of demanding that he be given a speedy trial before the period begins to run.

However, even assuming, *arguendo*, that the 120-day provision of section 103—5(a) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a)) applies to the the instant case, defendants would still not be entitled to the dismissal granted by the court below. For under section 103—5(a), the 120-day period does not begin to run until the accused is "in custody" for the offense alleged. Although it is difficult to provide a definition of "in custody," as that phrase is used in section 103—5(a), which will cover all cases where the accused is already incarcerated because of a prior conviction of an unrelated offense, it is clear that the mere fact that the accused was previously committed for a separate and distinct crime is immaterial. (*People v. Arbuckle*, 31 Ill. 2d 163, 201 N.E.2d 102, *cert. denied*, 380 U.S. 945, 13 L. Ed. 2d 964, 85 S. Ct. 1029.) Except in cases of deliberate or technical evasions of the provisions of the speedy trial statute (see *People v. Fosdick*, 36 Ill. 2d 524, 224 N.E.2d 242), when an accused is already in custody because of a prior conviction for an unrelated offense, some prosecutorial action is generally required to begin the running of the statutory speedy trial period. For example, in some cases the accused has been considered "in custody" for purposes of section 103—5(a) from the time a detainer warrant is placed against him. (See *People v. Gray*, 83 Ill. App. 2d 262, 227 N.E.2d 159; *People v. Vaughn*, 4 Ill. App. 3d 51, 280 N.E.2d 253.) In another case the accused has been considered "in custody" from the time of his post-indictment arraignment. (See *People v. Hundley*, 13 Ill. App. 3d 935, 301 N.E.2d 339.) And in yet another case the accused has been considered "in custody" from the time of his indictment. See *People v. Dery*, 31 Ill. App. 3d 70, 333 N.E.2d 259 (abstract opinion); also see *People v. Arbuckle*.

Moreover, the mere fact that the accused was placed in segregation because his conduct was violative of some institutional rule, even though that same conduct provided the basis for the criminal charge, is also immaterial for purposes of the speedy trial statute. (*People v. Dery*.) The following discussion in *Dery* is particularly illustrative of these points:

> "Defendants' motion for discharge was founded on the contention that they had been in court custody on the charges to which we are now concerned since October 21, 1973, for the reason that they were, at that time, placed in segregation in Stateville Prison as a result of their attempted escape, despite the fact that they were not indicted until April 23, 1974. At the hearing on this motion, defendants testified that the segregation resulted from their attempt escape. The assistant warden of Stateville testified that in his opinion, however, appellants were segregated because they had broken an institutional rule and not at all because they had violated a

criminal statute. The trial court concluded that defendants were not in custody while segregated for the purpose of consideration of the 120-day rule. (Illinois Revised Statutes, 1973, ch. 38, par. 103—5(a). The court concluded that the 120-day period should be calculated from the date of the indictment, and that none of the constitutional rights of defendants were prejudiced by the ten-month delay between the date of the offense and the trial.

The court's determination that the 120-day period did not commence until the indictment is correct. In *People v. Arbuckle* (1964), 31 Ill. 2d 163, 201 N.E.2d 102, the Illinois Supreme Court found that there was no violation of the four-term provision where the defendant who escaped from the penitentiary was tried more than 120 days after his recapture, but within 120 days of indictment. The court was likewise correct in finding that the institutional segregation of previously incarcerated prisoners is not the equivalent of being taken into custody on a criminal charge, since segregation is merely an administrative disciplinary sanction imposed on a prisoner for breaking the rules of the prison (*Gregory v. Wise*, 512 F.2d 378). It has no direct relation to the bringing of further and separate criminal charges. (*Adams v. Carlson*, 488 F.2d 619). (See also: sec. 804, Administrative Corrections, Adult Division). Since the 6th Amendment speedy trial provision is applicable only after a person is accused of a criminal offense and since no prejudice from any delay of the prosecution was established, appellants' constitutional rights to a speedy trial were not violated. (*United States v. Marion*, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468). Appellants' further contention that their constitutional right to a speedy trial was violated by the delay of the State in bringing criminal charges is without merit since there is no constitutional right to be arrested. (*Hoffa v. United States*, 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408.) The court's ruling on the motion for discharge was therefore correct."

■■ In the instant case defendants' petition for rehearing on the motions to dismiss pointed out that the reports of the various prison officers involved in the alleged incident made it clear that defendants had been placed in segregation to await prison disciplinary action. There were never any detainer warrants placed against defendants, and they were both indicted within three months after the alleged incident. At the time the charges were dismissed, only 104 days had passed from the date of the indictments. Under these circumstances, we feel as did the courts in *Arbuckle* and *Dery*, that defendants were not deprived of the right to a speedy trial.

For the foregoing reasons, the orders of the circuit court of Randolph County dismissing the indictments are reversed, and this cause is remanded with directions to reinstate the indictments.

Reversed and remanded with directions.

KARNS, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

I do not believe that section 3—8—10 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—8—10) was the applicable speedy trial statute. That section speaks of "untried complaints, charges or indictments pending in *any county*" and says "The state's attorney shall then *procure the presence of said defendant for trial in his county* by writ of habeas corpus." (Emphasis added.) Crimes allegedly committed by a prison inmate in a prison, however, can be prosecuted only in the county where the prison is located. (See Ill. Rev. Stat. 1975, ch. 38, par. 1003—6—5.) This contrast demonstrates that section 3—8—10 of the Unified Code of Corrections does not deal with crimes allegedly committed in prison, but with crimes supposedly committed by an individual outside of prison before he is incarcerated. Since the charges against the defendants arose from an incident in prison, the charges were not within the scope of section 3—8—10 of the Unified Code of Corrections.

Because section 3—8—10 of the Unified Code of Corrections was inapplicable to the defendants, they had to be prosecuted "in the same manner and subject to the same rules and limitations as are now established by law in relation to other persons charged with crime." (Ill. Rev. Stat. 1975, ch. 38, par. 1003—6—5.) This means that the defendants had to be brought to trial within the 120-day period specified by section 103—5(a) of the Code of Criminal Procedure.

The statutory period of section 103—5(a) starts to run when a defendant is taken into custody. (*People v. Spicuzza*, 57 Ill. 2d 152, 311 N.E.2d 112; Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a).) When this section is applied to a prison inmate who has allegedly committed a crime in prison, a problem exists in determining when the statutory period begins to run because the inmate cannot be taken into custody; he is already in custody.

No decision of the Illinois Supreme Court clearly indicates when the period under section 103—5(a) of the Code of Criminal Procedure commences for a prison inmate who is charged with committing a crime in prison. The State relies upon *People v. Dery*, 31 Ill. App. 3d 70, 333 N.E.2d 259 (3d Dist. 1975), as authority for its argument that the segregation of an

inmate for an alleged offense in prison does not start the statutory period running. *Dery* says that the period does not begin to run until the inmate is indicted. Another case, *People v. Hundley*, 13 Ill. App. 3d 935, 301 N.E.2d 339 (4th Dist. 1973), holds that the period begins to run when the inmate is arraigned.

Despite the authority supplied by *Dery* and *Hundley*, I believe we should follow our decision in *People v. Vaughn*, 4 Ill. App. 3d 51, 280 N.E.2d 253. *Vaughn* holds that the prosecution has a duty to take affirmative steps to bring a defendant to trial when it knows where the defendant is being held in custody. In *Vaughn*, this court held that the 120-day period of section 103—5(a) of the Code of Criminal Procedure began to run when the administrator of the prison where the defendant was confined received a letter from the county sheriff containing warrants for the defendant's arrest.

The general principle which may be derived from *Vaughn* is that in the absence of an applicable statute to the contrary, such as section 103—5(e) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(e)) or section 3—8—10 of the Unified Code of Corrections, the statutory speedy trial period on one charge, for a defendant who is in custody on another charge, begins to run when the defendant becomes accused under the first charge in some formal or official way. (*Cf. People v. Love*, 39 Ill. 2d 436, 235 N.E.2d 819.) We believe that an accusation sufficient to start the statutory period running on a charge against a prison inmate, for a crime allegedly committed in prison, occurs when the inmate is placed in segregation as punishment for the crime, or when the prison administrators request the local state's attorney to prosecute the inmate for the crime.

The defendants, Smith and Coleman, were placed in segregation on September 18, 1974, and remained there until at least March 31, 1975, as punishment for their alleged battery of the officer. The 120-day period on the charges against the defendants, therefore, began to run on September 18, 1974, and expired on January 16, 1975, before the defendants were brought to trial. Even if the defendants' placement in segregation is not regarded as enough to start the statutory period running, the letter from the prison administrator to the state's attorney of Randolph County on September 20, 1974 requesting that the defendants be prosecuted was sufficient for that purpose. If September 20, 1974, is considered as the date on which the 120-day period began to run, the period expired on January 18, 1975, before the defendants received a trial.

The circuit court of Randolph County properly concluded that the defendants had been denied a speedy trial. The orders of the circuit court of Randolph County dismissing the indictments should be affirmed.