**Charles C. LAMBERT, Plaintiff,**

v.

**John P. CORNISH, Defendant.**

**Civ. A. No. 78–K–818.**

United States District Court,
D. Colorado.

Oct. 27, 1978.

Charles C. Lambert, pro se.

Donald M. Hoerl, Asst. U. S. Atty., Denver, Colo., Jeffrey A. King, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

ORDER OF DISMISSAL

KANE, District Judge.

This action was removed from the state court pursuant to 28 U.S.C. § 1442(a)(1) and § 1446. Defendant filed a motion for summary judgment on September 28, 1978.

The plaintiff has not responded to the motion nor in any other manner complied with the Federal Rules of Civil Procedure. The *pro se* complaint in this action alleges that defendant John P. Cornish, Special Agent in the Criminal Investigation Division, Denver District, Internal Revenue Service, violated plaintiff's constitutional rights by questioning plaintiff regarding his 1975 and 1976 tax returns.

Specifically alleged is that defendant Cornish, on June 15, 1977, came to plaintiff's home in an attempt to "unlawfully interrogate" plaintiff about his 1975 and 1976 "so-called" tax returns. Plaintiff urges that such action constituted "trespass for malicious prosecution"; slander; libel; defamation of character; a deprivation of plaintiff's "common law rights to due process at common law"; and an action for damages arising under "the common law or unwritten law, and the Federal Constitution of the United States and Bill of Rights."

Plaintiff urges that the "so-called" income tax laws do not apply to private individuals, only statutory persons or individual citizens that have been naturalized in the state where they reside. He argues that the Internal Revenue Code does not specify that it applies to people "born," hence, making the income tax laws inapplicable to him. Plaintiff contends that the "so-called criminal income tax prosecution of plaintiff constitutes Malicious Prosecution With Evil Intent."

Furthermore, plaintiff asserts that the code terms "person" and "individual" do not place civil or criminal liability upon "natural persons" or "private individuals" and that the vagueness of those terms leaves the "poor" layperson at a loss in determining to whom they apply. Plaintiff argues that with a "little threat, force and coercion from the I.R.S., the [Plaintiff] can be convinced by his employer that those two Foreign, Insidious, and Deceptive words apply to [Plaintiff]; . . . ."

In conclusion, plaintiff contends that neither the I.R.S. nor defendant Cornish has "jurisdiction" over the plaintiff or his records.

In support of his motion for summary judgment, defendant Cornish submitted his affidavit, setting forth, in part, the following facts:

That on June 21, 1977 he was assigned to investigate possible violations of the Internal Revenue laws by plaintiff Lambert; that on June 27, 1977, Special Agent Donald W. Karch and the affiant met plaintiff Lambert at his residence; that they identified themselves and informed plaintiff that the I.R.S. had no record of him filing a federal income tax return for the years 1975 or 1976 and that they were there to determine why; that upon request of plaintiff Lambert a certified letter, dated June 29, 1977 was sent to the plaintiff establishing a time and place for a meeting along with a request that plaintiff bring with him certain books and records relating to his income and expenses for the years 1975 and 1976; that at this July 7, 1977 meeting affiant introduced himself and Special Agent Karch to plaintiff Lambert and informed plaintiff that their function was to investigate the possibility of criminal violations of the Internal Revenue Laws; that a statement was read to plaintiff Lambert advising him that his tax liability was being investigated and that he had a fifth amendment right to remain silent if any information or answers would tend to incriminate him; that he was further advised that anything he might say could be used against him in any criminal proceedings which could be undertaken and that he could seek the assistance of an attorney before responding to any questions; that plaintiff Lambert chose not to waive his constitutional rights; that, at plaintiff's request, on July 18, 1978 affiant and Special Agent Frank D. Contos went to plaintiff's home whereupon plaintiff was informed that his constitutional rights were still in effect; that plaintiff Lambert again refused to respond to most questions posed to him; that plaintiff indicated an amended 1975 federal income tax return had been filed and that in 1976 he had taken a vow of poverty

and had not filed a tax return; that a letter, dated September 15, 1977 was sent to plaintiff Lambert requesting certain information to determine the correct allowable itemized deductions to which he would be entitled for the years 1975 and 1976; that by return letter, dated October 3, 1977, plaintiff responded by asserting that he would not answer these questions without waiving his fifth amendment rights; that affiant then caused to issue summonses to various financial institutions in order to determine the correctness of plaintiff's 1975 return and to make a return for plaintiff for 1976; that plaintiff was notified upon the issuance of each summons to a third-party recordkeeper; that on June 28, 1978 affiant sent plaintiff a letter requesting that plaintiff contact the affiant to set up a meeting in order for plaintiff to help identify portions of his bank records for 1975 and 1976; that all of the above action was undertaken by affiant in the belief that it was necessary and incident to his assigned duties and that each was carried out in good faith and within the scope of his duties as a Special Agent of the Internal Revenue Service; and, finally, that except for the contacts set forth above, affiant has had no personal contacts with plaintiff Lambert in any capacity.

The Tenth Circuit has admonished trial judges to refrain from "trial by affidavit." Thus, it must be determined whether the facts taken in the light most favorable to the vivification of plaintiff's complaint are sufficient to sustain the cause of action. A complaint should not be dismissed for failure to state a claim unless it clearly appears that the complainant can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1975); *Kennedy v. Meacham,* 540 F.2d 1057 (10th Cir. 1976); *Gregory v. Wyse,* 512 F.2d 378 (10th Cir. 1975). Motions to dismiss *pro se* actions are rightfully held in disfavor.

It cannot be gainsaid that the United States government has the right to gather information for the collection of revenue. *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *Pauldino v. United States,* 500 F.2d 1369 (10th Cir. 1974). Under the authority of § 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602, a Special Agent for the Internal Revenue Service can issue a summons

> [f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting such liability

> . . . . .

Pursuant to this section, the Special Agent is authorized

> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, . . . to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

The limits of the good-faith use of an Internal Revenue summons issued under § 7602 was recently considered by the United States Supreme Court in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). In analyzing the coterminous nature of the civil and criminal investigative functions of the Internal Revenue Service, the court took recognition of the goal of the Intelligence Division "to encourage and achieve the highest possible degree of voluntary compliance with the internal revenue laws." 26 C.F.R. § 601.107 (1977). The court reasoned:

The Secretary of the Treasury and the Commissioner of Internal Revenue are charged with the responsibility of administering and enforcing the Internal Revenue Code. 26 U.S.C. §§ 7801 and 7802. Congress, by § 7601(a), has required the Secretary to canvass revenue districts to "inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." With regard to suspected fraud, these duties encompass enforcement of both civil and criminal statutes. The willful submission of a false or fraudulent tax return may subject a taxpayer not only to criminal penalties under §§ 7206 and 7207 of the Code, but, as well, to a civil penalty, under § 6653(b), of 50% of the underpayment. And § 6659(a) provides that the civil penalty shall be considered as part of the tax liability of the taxpayer. Hence, when § 7602 permits the use of a summons "[f]or the purpose of ascertaining the correctness of any return, . . . determining the liability of any person for any internal revenue tax . . ., or collecting any such liability," it necessarily permits the use of the summons for examination of suspected tax fraud and for the calculation of the 50% civil penalty. In *Donaldson,* 400 U.S., at 535, 91 S.Ct. 534, we clearly noted that § 7602 drew no distinction between the civil and criminal aspects; that it "contains no restriction"; that the corresponding regulations were "positive"; and that there was no significance, "for civil as compared with criminal purposes, at the point of a special agent's appearance." The Court then upheld the use of the summonses even though fraudulent conduct carried the potential of criminal liability." *Id.* at 308, 98 S.Ct. at 2363.

The court thus concluded that the primary limitation on the use of a summons arises only upon the recommendation of criminal prosecution to the Department of Justice. "Only at that point do the criminal and civil aspects of a tax fraud case begin to diverge." *Id.* at 311, 98 S.Ct. at 2365. Upon referral, "the authority to settle rests with the Department of Justice." *Id.*

In the case at bar there is no question that Special Agent Cornish was proceeding pursuant to the mandates of Congress in order to achieve "voluntary compliance with the internal revenue laws." There is no question that he proceeded in the manner contemplated by those laws as set forth in the Internal Revenue Code of 1954. The efforts made by the Special Agent are evidenced by the correspondence between the parties commencing on June 21, 1977. Special Agent Cornish made every effort to get plaintiff Lambert to cooperate with the investigation by setting up meetings, requesting records, informing him that they were investigating the possibility of criminal violations, by reading him his constitutional rights, and eventually, by issuing summonses to various financial institutions in an attempt to determine the correctness of plaintiff's 1975 amended return and to make a return for plaintiff for the year 1976. All of these actions were within the scope of his authority as conferred by the Code. 26 U.S.C. § 7602; 26 C.F.R. § 601.107 (1977).

█ Since no recommendation had been made to the Department of Justice to proceed criminally at the time this investigation was conducted, it is not determinative that Special Agent Cornish perceived his function to be that of criminally investigating the plaintiff along with that of determining plaintiff's civil tax liability for the years in question. *United States v. LaSalle National Bank, supra.*

█ Plaintiff Lambert has not attacked the propriety of the investigation or that of the summonses issued other than to allege that the United States government does not have the "jurisdiction" to tax him. He has ot alleged facts which would support a constitutional claim of unreasonable search and seizure or for that matter any other outrageous conduct which could give rise to a civil rights claim. He has bootstrapped his claims of malicious prosecution, slander, libel, and defamation of character to this claim of lack of jurisdiction.

The Anti-Injunction Statute, 26 U.S.C. § 7421(a), provides, in part, that "no suit for

the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ." The constitutionality of this statute was upheld by the United States Supreme Court in *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). The court determined that the application of the statute was not a denial of due process since the taxpayer had access to judicial review in a refund action. *See* 26 U.S.C. § 7422.

Hence, if plaintiff Lambert wishes to contest the assessment of any taxes in this case he must proceed according to the procedures set forth in the Code, i. e., payment of the tax assessment as determined by the Internal Revenue Service and then commencement of a refund action to vindicate his rights.

For the foregoing reasons defendant's motion for summary judgment is granted. This case and civil action are hereby deemed frivolous and dismissed with prejudice.