**The People of the State of Illinois, Plaintiff-Appellee, v. Jerry Limauge, Defendant-Appellant.**

Gen. No. 10,851.

Fourth District.

December 6, 1967.

John Unger, Public Defender, of Danville, for appellant.

John P. O'Rourke, State's Attorney of Vermilion County, of Danville, for appellee.

SMITH, J.

Defendant was charged with driving while license revoked, he pleaded guilty and was sentenced to and served seven days in the county jail. He thereafter attempted to avoid trial on a two-count indictment for reckless homicide and manslaughter, arguing that these offenses arose "out of the same transaction upon the same date," as the revocation charge—or so ran the stipulation—urging the bar of § 3–4(b) of the Criminal Code (Ill Rev Stats 1965, c 38, § 3–4(b)). Such, for our purposes, reads:

> "A prosecution is barred if the defendant was formerly prosecuted for a different offense . . . if such former prosecution: (1) Resulted in either a conviction or an acquittal, and the subsequent prosecution is for an offense . . . with which the defendant should have been charged on the former prosecution, as provided in Section 3–3 of this Code. . . ."

Turning to § 3–3, and in particular, subparagraph (b), we find that if different offenses "are based on the same act," they must "be prosecuted in a single prosecution," except in certain situations not present here. Defendant's attempt was to no avail, he was tried, convicted of reckless homicide and sentenced to a term of one year. The manslaughter count was dismissed on motion of the State's Attorney during the trial. Defendant now seeks reversal of this conviction, again, placing his reliance on the sections just quoted.

The problem of separate prosecution for interrelated offenses has always been a vexing one and these sections are the legislative answer. A close rereading of § 3–3, however, indicates a much narrower application than one might have originally supposed. For instance, it will have no application at all apropos of included offenses § 3–4(b). Furthermore, as per subparagraph 3–3(a),

308

offenses based on the "same conduct" *can* be serialized for trial, but if sentences are imposed, they must run together, as § 1–7 (m) prohibits consecutive sentences for offenses which "result from the same conduct," which would mean that in these instances multiple prosecutions would be a waste of time, if measured by results—leading one to believe that this might have been a legislative lapsus memoriae. Thus, the area of probable application of § 3–3 is a very small one indeed.

Because the facts presented are not particularly precise, at least as precise as we would like them, we could easily dispose of this appeal by latching on to the stipulated phrase "same transaction," equate such with "same conduct," which would be eminently proper, and with an eye to § 3–3 (a) simply announce that the tandem prosecutions present here were in order. But these sections have caused no little concern, and it would seem a bit precious on our part to so finesse the real question presented. To come to grips with such and thereby provide a definitive answer, we posit it thusly: Is it ever a possibility that these two offenses could arise from a single act?

What is an "act" as used in the context of § 3–3? It is certainly not as inclusive as its synonym, "conduct," for "conduct" can mean for one thing, a "series of acts," as § 2–4 very plainly says. But, though limited in application, as we have said, this section, being remedial, should be given a liberal construction. Quite obviously, the legislative purpose was to prevent the exaggeration of criminality for a given "act," from which separate offenses might arise, as serialized prosecutions for such offenses would have precisely that effect. This purpose would have been enhanced through the use of the word "conduct," but it is not for us to so enhance it, by giving this very particular word a larger meaning. Apparently, the Legislature was of a mind that there

309

might be occasions when serialized prosecutions would be called for, even though there could not be consecutive sentences, and subparagraph (c) of § 3–3, even authorizes tandem prosecutions for offenses which do arise from the "same act," if it is in the "interest of justice." What circumstances might occasion this happenstance, we need not expatiate on, as such, at least here, is beyond our province.

Other than telling us that an "act" includes a failure to take action (§ 2–2), the Code is silent as to meaning—as well it might be, for sometimes a point of no return is reached when attempt is made to give more explicit meaning to particular words. But we must of needs provide a working definition, and an apt a one as any is that "an act" is something done or not done by somebody who wants it that way. Juxtapose this with the definition of the offenses involved, and we begin to glimpse our answer. Succinctly put, reckless homicide is the act of recklessly driving a vehicle in a manner likely to and which does cause death (§ 9–3), while driving with license revoked is the act only of driving without a license (§ 6–303, c 95½, Ill Rev Stats 1965). Is not our answer, that two distinct "somethings" have to be done (or not done) for these two offenses to arise? We think so, and that fact that both acts take place simultaneously is immaterial. Quite obviously, two "somethings" can occur simultaneously, and if they happen to be offenses, as here, there can be two prosecutions.

Admittedly, these offenses are cognate, neither require a specific intent, both arise from the "same conduct"—driving—both occur at the same time and place, but there the twain separate. For instance, as the Supreme Court of Minnesota has pointed out, it is possible, indeed quite probable, that a person whose driver's license has been revoked would probably drive with considerably more caution than perhaps one would whose driver's

310

license was still in force. State v. Reiland, 274 Minn 121, 142 NW2d 635. We quote:

> "Since it is quite possible, and perhaps very probable, for one to drive carefully despite revocation of his driver's license, that misconduct—unlike, for example, reckless driving—need have no relationship to driving in a grossly negligent manner."

In short, the act giving rise to each, can happen without the other, or, they can coincide, and yet both are sui generis. This could not be true with, say, voluntary manslaughter and reckless homicide—in other words, to paraphrase our initial statement of the problem, it is well within the realm of the possible that these two offenses can arise from a single "act."

Here, clearly, as to each offense, the state of mind of the defendant is divisible, and just as clearly, it is indivisible as to the indictment charges—manslaughter and reckless homicide. To phrase it another way, two behavioral incidents are present—and it makes no difference whether both are volitional or nolitional, or one and the other. Here, the errors of judgment were volitional, yet one does not partake of the other, at least in the sense of § 3–3 (b). As was further said in the case just cited, 142 NW2d 635, 638:

> "Defendant's state of mind or error in judgment causing him to drive after revocation may be characterized as willfully defying a statute designed to punish drivers who have had their driver's license revoked. As such, it has no relationship to the conduct of operating and controlling a motor vehicle in a grossly negligent manner, either in cause or effect."

The magic word in the Minnesota Statute is "conduct" —"if a person's conduct constitutes more than one of-

fense"—a broader word, as we have seen, hence being bound by the more exclusive "act," the case before us is a fortiori.

The remaining point urged for reversal can be disposed of quickly. The dismissal of the manslaughter charge during the trial in no way, as we have seen, militates against the trial continuing on the homicide count to a conviction. Of course, the manslaughter charge can never be resurrected, (3–4(a)(3)) and it could not now be brought even if never begun, for this is what § 3–4(b) is all about.

The State urges an additional point for affirmance— the homicide charge was not "known" (§ 3–3(b)) at the time the revocation charge was brought, in the sense that the revocation offense was immediately apparent, while the aptness of the homicide charge was not—that such could not be determined until there had been further investigation. But "aptness" is not the same as "known." This would have been true,—assuming only a single act, if death had occurred subsequent to the revocation conviction, but here the death occurred before. Thus, the several offenses were "known" to the proper prosecuting officer at the time of the commencement of the revocation prosecution.

Defendant also argues that the reckless homicide act is void for vagueness, but we do not think so. People v. Garman, 411 Ill 279, 103 NE2d 636. The judgment and conviction appealed from is affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.