April 30, 1998

NO. 5-96-0746

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,)  Appeal from the 

                                    )  Circuit Court of

     Plaintiff-Appellee,            )  Washington County.

                                    )

v.                                  )  No. 95-CF-74

                                    )

STEVE GOODEN,                       )  Honorable

                                    )  Lloyd A. Karmeier,

     Defendant-Appellant.           )  Judge, presiding.

_________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

Following a stipulated bench trial, defendant Steve Gooden was found guilty of home invasion and aggravated criminal sexual assault.  He was sentenced to concurrent terms of 12 years' imprisonment with credit for 302 days served.  On appeal, defendant argues that his statutory right to a speedy trial (725 ILCS 5/103-5 (West 1996)) on the aggravated criminal sexual assault charge was violated.  Defendant also argues on appeal that his sentence is void because Public Act 89-404 is unconstitutional.  Defendant lastly argues that his 12-year prison sentences are excessive.  We affirm.

On December 21, 1995, defendant was charged with one count of home invasion.  He was arrested on the same date and did not post bond.

On December 27, 1995, a preliminary hearing was held at which Charlie Parker, the investigator for the Washington County State's Attorney's Office, testified that when he interviewed the victim, M.G., she stated that defendant, M.G.'s ex-husband, forced his way into her home and "sexually assaulted her."  She then described to Parker an act of sexual intercourse between her and defendant.

On April 4, 1996, defendant made a motion for a continuance to the August trial setting so that he could seek funds for the hiring of an expert witness.  The cause was continued to the August 19, 1996, jury setting.

On April 18, 1996, upon defendant's motion, Fred D. Krug, a psychiatrist, was appointed to examine defendant's mental fitness.

On July 26, 1996, the State filed an amended criminal information, which charged defendant with one count of home invasion and five counts of aggravated criminal sexual assault.

On August 1, 1996, trial was set for August 26, 1996.

On August 5, 1996, defendant filed a motion to dismiss the aggravated criminal sexual assault counts.  The motion alleged that 120 days had elapsed between defendant's arrest and the filing of aggravated criminal sexual assault charges.  Attached to the motion is a complaint for search warrant filed December 21, 1995.  In the complaint for a search warrant for defendant's motor vehicle, the Washington County State's Attorney's investigator stated that on December 21, 1995, he interviewed M.G., who told him of the circumstances of the home invasion and that defendant "had sexual intercourse with" M.G.

On August 14, 1996, after a hearing, the court denied defendant's motion to dismiss the aggravated criminal sexual assault counts.  During the hearing, the State's Attorney reviewed the reports that he had received from the State crime laboratory.  According to the State's Attorney, an April 26 report stated that the DNA profiles of M.G. and defendant could not be matched.  The May 25, 1996, report stated that because defendant had a vasectomy, DNA could not be matched but a standard blood test would be used.  Blood analysis indicated that seminal material on M.G.'s panties could have originated with defendant.  The State received the blood analysis report on June 10.  Once the State received evidence corroborating the victim's statement, the additional counts of aggravated criminal sexual assault were filed.  The State concluded that the home invasion and aggravated criminal sexual assault were separate acts.

On August 20, 1996, defendant's stipulated bench trial was conducted.  The State proceeded on the home invasion charge and on one count of aggravated criminal sexual assault.  After a finding of guilty, the remaining charges were dismissed.  The stipulated facts are as follows.  If M.G. were called to testify, she would testify that while sleeping on her bed on December 20, 1995, at approximately 7:30 p.m., she heard the sound of breaking glass.  When she got up, she saw defendant, who was holding a gun.  Defendant forced her back into the bedroom, pointed the gun at her, and yelled at her.  They then went to the dining room and talked as defendant sometimes pointed the gun at her.  He hit her in the upper chest area with the butt of the gun.  When they started talking about their marriage, defendant hit M.G. in the head with the butt and barrel of the gun and hit her face with his fist.  Their conversations were interspersed with defendant beating M.G.  At one point, he asked her if she wanted him to take her to the hospital, but she declined.  Defendant then left M.G.'s house to get cigarettes out of his car, got the cigarettes, and reentered the house.  Defendant took M.G.'s hand, led her to the bedroom, and told her to take off her clothes.  He took out a knife, which eventually was placed on a dresser.  Defendant then performed oral and vaginal intercourse on M.G.  He then asked her to shoot him, which she declined to do.  Defendant placed the barrel of the gun at his head and screamed at M.G. to pull the trigger.  She pulled the barrel away from his head, and he stated that he did not really want to die.  During the entire episode, defendant appeared to be intoxicated.  When defendant eventually left, M.G. called 9-1-1.  The State's Attorney also recited the physical evidence and the potential testimony of investigating officers.

Defendant initially contends that his right to a speedy trial was violated when the amended criminal information was filed, which alleged four counts of aggravated criminal sexual assault in addition to the initial charge of home invasion.  He argues that more than 120 days elapsed between the filing of the initial criminal information and the trial and that continuances granted to him on the home invasion charge cannot be attributable to him on the aggravated criminal sexual assault charge, because that charge was not in existence when the continuances were granted.  One hundred and twenty days from December 21, 1995, was April 19, 1996.   Defendant's argument has a basis in case law, since it has been held on several occasions that if new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, then the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges (
People v. Williams
, 94 Ill. App. 3d 241, 248-49, 418 N.E.2d 840, 846 (1981)).  
Williams
 
also held that continuances obtained in connection with the trial of the original charges cannot be attributed to defendant with respect to the new and additional charges, because these new and additional charges were not before the court when those continuances were obtained.  
Williams
, 94 Ill. App. 3d at 249, 418 N.E.2d at 846; see 
People v. Stanley
, 266 Ill. App. 3d 307, 309-10, 641 N.E.2d 1224, 1226 (1994) (quoting 
Williams
); 
People v. Rodgers
, 106 Ill. App. 3d 741, 744, 435 N.E.2d 963 (1982) (same).  

In support of its holding, 
Williams
 cited three cases to support the proposition that continuances are not chargeable on offenses not before the court:  
People v. Williams
, 2 Ill. App. 3d 993, 278 N.E.2d 408 (1971), 
People v. Parker
, 59 Ill. App. 3d 302, 375 N.E.2d 465 (1978), and 
People v. King
, 8 Ill. App. 3d 2, 288 N.E.2d 672 (1972).  In 
People v. Williams
, 2 Ill. App. 3d 993, 278 N.E.2d 408 (1971), defendant was incarcerated on September 29, 1967, for the murder of Ambrose Lane and the attempted murder of William Thompson.  In October 1967, Williams was indicted for the murder, and no indictment was sought or returned for the attempted murder.  On June 5, 1968, an indictment was returned charging him with the attempted murder.  The trial court dismissed the attempted murder indictment upon the grounds that the defendant Williams had been in custody for more than 120 days without having been brought to trial, and the State appealed.  The 
Williams
 court upheld the dismissal of the attempted murder indictment and reasoned that the indictment on that charge was not before the court when the continuances were requested.  
Williams
, 2 Ill. App. 3d at 994, 278 N.E.2d at 409.  Although the 
Williams
 court stated that some continuances were attributable to the court, some to the State, and some to defendant, the opinion is not clear as to what continuances were not attributable to the defendant.  There was no citation of authority for the proposition that the attempted murder charge should be dismissed because it was not before the court when the continuances were requested.

In 
King
, defendant was placed in custody on March 4, 1968, and was charged with attempted murder.  On October 4, 1968, he was indicted for unlawful use of weapons, which arose out of the same factual setting as the attempted murder.  The appellate court concluded that the weapons charge should be dismissed.  It relied entirely on the compulsory-joinder provisions of section 3-3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 3-3 (now 720 ILCS 5/3-3 (West 1994))) in arriving at that conclusion. 

In 
Parker
, the defendant was indicted in March 1974 for bribery and official misconduct.  In October 1975 he was reindicted for these offenses, plus a count of theft which arose out of the same facts.  The appellate court affirmed the dismissal, in January 1976, of all charges, on the basis of speedy-trial violations.  Citing 
King
, it concluded that the dismissal also applied to the theft charge since that charge "arose from the same set of facts as the other charges, and the State knew of these facts at the time the initial indictment was returned."  
Parker
, 59 Ill. App. 3d at 305, 375 N.E.2d at 468.  

Thus, it appears that one of the bases of the holdings in those cases was the compulsory-joinder provision of section 3-3(b).  If the newly charged offenses are known to the State at the time of the original prosecution and they arise from the same set of facts, then they are subject to the speedy-trial limits that apply to the original charge, regardless of when the new charges are filed.  We have no problem with this proposition.  However, it is illogical to hold that continuances which are attributable to the original charges are not attributable to the later-filed charges on the basis that those charges are not before the court.  The defendant cannot have it both ways.  He cannot seek continuances that benefit him and enable him to better prepare for trial on the charges and then seek the dismissal of a later-filed charge on the basis that 120 days had elapsed since he was brought into custody.  

In the case at bar, before filing additional charges, the State waited until it could get scientific results to support the victim's statement that she had been sexually assaulted by the defendant.  This seems preferable to the State filing charges initially and having the defendant defend against charges that may be unfounded or have little supporting evidence.  Nothing in the record indicates that the aggravated criminal sexual assault charges were filed in an effort to deprive defendant of his right to a speedy trial or to hinder his defense.  The speedy-trial statute was adopted to prevent oppressive pretrial incarceration.  
People v. Hawkins
, 212 Ill. App. 3d 973, 980, 571 N.E.2d 1049, 1054 (1991).  Defendant was tried within eight months of his arrest.  His attempt to obtain mental health evidence that might have been favorable to him, and not the State's late filing of the aggravated criminal sexual assault charges, was the reason why he was not tried within 120 days of his arrest.  At the time of sentencing, Dr. Krug had sent a partial report.  The parties and court agreed that because a complete report had not been received, the partial report would not be considered in sentencing.  

We note that if the State had nol-prossed the home invasion charge within the speedy-trial term and later filed the amended information in this case, the charges would not have been subject to dismissal absent a showing of prosecutorial misconduct.  See 
People v. Freedman
, 155 Ill. App. 3d 469, 508 N.E.2d 326 (1987); 
People v. Watkins
, 220 Ill. App. 3d 201, 581 N.E.2d 145 (1991); 
People v. Stinnett
, 166 Ill. App. 3d 1027, 520 N.E.2d 1204 (1988).  In 
Watkins
, defendant was charged with possession with intent to deliver a controlled substance, and the charge was nol-prossed because the lab results were not available.

Defendant relies on 
People v. Hinkle
, 234 Ill. App. 3d 663, 600 N.E.2d 535 (1992), a decision of this district of the Illinois Appellate Court.  On October 24, 1990, Hinkle was arrested for unlawful use of weapons by a felon.  On March 11, 1991, the State filed a two-count criminal information charging defendant with aggravated criminal sexual assault and unlawful use of weapons by a felon.  On March 22, 1991, Hinkle filed his motion to dismiss the aggravated criminal sexual assault charge on speedy-trial grounds.  At the hearing, the State conceded that it had knowledge of the facts underlying both charges "from day one."  Relying on 
People v. Williams
, 94 Ill. App. 3d 241, 418 N.E.2d 840 (1981), the court dismissed the aggravated criminal sexual assault charge for failure to comply with the "120-day rule."  Quoting 
Williams
, this court affirmed the circuit court and reasoned that no delay can be attributed to a defendant on a new charge until that charge is filed.  
Hinkle
, 234 Ill. App. 3d at 666, 600 N.E.2d at 537; see also 
People v. Howard
, 205 Ill. App. 3d 702, 563 N.E.2d 1219 (1990).  Upon reflection, this court disagrees with the 
Hinkle
 and 
Howard
 decisions and declines to follow them.

Defendant next argues that Public Act 89-404, which created the truth-in-sentencing provisions, violates the single-subject rule of article IV, section 8, of the Illinois Constitution of 1970.  He argues, therefore, that his sentence is void, and he asks that we order that he receive day-for-day good-time credit as provided by section 3-6-3 of the Unified Code of Corrections (730 ILCS 5/3-6-3 (West 1994)), the statute in effect prior to the enactment of Public Act 89-404.  

Defendant's argument was recently successful in the Fourth District case of 
People v. Pitts
, No. 4-97-0071 (March 2, 1998).  See also 
People v. Reedy
, No. 2-96-0101 (March 11, 1998).  The argument was not successful, however, in the recent Third District case of 
People v. Watford
, 294 Ill. App. 3d 462, 690 N.E.2d 1009 (1997).  Because we agree with the reasoning of 
Watford
, we hold that like Watford, the defendant in this case cannot challenge in a direct appeal the constitutionality of the act codifying the truth-in-sentencing laws, as the application of these laws is a matter outside the scope of the sentencing proceedings.  As stated in 
Watford
:  

"[I]n order to challenge the application of `good time' credit by the Department of Corrections, the defendant must file either a 
habeas corpus
 petition, a petition for writ of 
mandamus
, or an action for declaratory judgment directed at the Department of Corrections, alleging that the Department is improperly calculating his `good time' credit by implementing an unconstitutional statute when determining the time he has remaining to serve before his release."  
Watford
, 294 Ill. App. 3d at 464, 690 N.E.2d at 1011. 

We cannot find, therefore, that defendant's sentence is void.

Defendant lastly argues that his 12-year prison sentences are excessive, given his potential for rehabilitation and the requirement that he serve 85% of the term.  Defendant recognizes that he did not file a postsentencing motion to reduce sentence as required by section 5-8-1(c) of the Unified Code of Corrections (730 ILCS 5/5-8-1(c) (West 1994)).  See 
People v. Reed
, 177 Ill. 2d 389, 686 N.E.2d 584 (1997).  Defendant, however, asks us to decide the issue raised.  Even if this issue was not waived, defendant's argument has no merit.  

It has long been established that the trial court has broad discretionary powers in choosing the appropriate sentence a defendant should receive.  Where the sentence chosen by the trial court is within the statutory range permissible for the pertinent criminal offense for which the defendant has been convicted, a reviewing court will disturb the sentence only if the trial court abused its discretion in the sentence imposed.  
People v. Jones
, 168 Ill. 2d 367, 374, 659 N.E.2d 1306, 1308 (1995); 
People v. Coleman
, 166 Ill. 2d 247, 652 N.E.2d 322 (1995).  While the statutory classification of the crime determines the range of permissible sentences, the severity of the sentence within that range depends largely upon the degree of harm caused.  
People v. Gandy
, 227 Ill. App. 3d 112, 135, 591 N.E.2d 45, 61 (1992).  

Defendant argues that the trial court abused its discretion in sentencing him to 12 years' imprisonment, even though that sentence is within the statutory range for class X felonies.  Defendant contends that because he was 37 years old at the time of sentencing and had no prior felony conviction, he should be considered capable of rehabilitation.  

Defendant also argues that less than four months prior to the offenses against M.G., a person convicted of class X felonies was eligible for day-for-day good-conduct credit.  Therefore, a person sentenced to a 12-year prison term was eligible for release in six years.  Here, although the trial court did not state that it took into consideration the truth-in-sentencing provision in fashioning defendant's sentence, it is presumed that the court was aware of the law.  
See People v. Askew
, 273 Ill. App. 3d 798, 805, 652 N.E.2d 1041, 1047 (1995).  

The record shows that the trial court did consider the circumstances of the offenses.  The trial court had before it defendant's presentence investigation report, which showed that he had no prior felony convictions and had convictions for driving under the influence of alcohol and resisting arrest.  The report shows that defendant had a substantial history of employment and served four years in the United States Air Force.  The court heard defendant's expression of remorse for his actions, which the court stated it considered in sentencing.  The trial court stated that it believed that the sentence was necessary to deter similar conduct by others.  

The court heard argument from the State that the court should sentence defendant to between 15 and 20 years' imprisonment.  The permissible range of sentencing available to the court in this case was a term of not less than six years' imprisonment and not more than 30 years' imprisonment.  See 730 ILCS 5/5-8-1(a)(3) (West 1994).  As the trial court noted, the physical trauma defendant inflicted on the victim was far in excess of the elements required for home invasion and aggravated criminal sexual assault.  This court notes that the psychological trauma which was inflicted on M.G. by the defendant, who intermittently pointed a gun at the victim and then himself over an extended period of time, was far in excess of the elements of both offenses.  Given the record, we cannot find that the court abused its discretion in imposing a prison sentence of 12 years, which is just six years greater than the minimum but is 18 years less than the maximum allowable sentence.  We affirm defendant's sentence.

Affirmed.

WELCH, P.J., and HOPKINS, J., concur.