(No. 85439

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. STEVE GOODEN, Appellant.

*Opinion filed February 17, 2000.*

Daniel M. Kirwan, Deputy Defender, and Janet Gandy Fowler, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers and Adrian J. Barrio, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Following a bench trial, the circuit court of Washing-

ton County found defendant, Steve Gooden, guilty of home invasion (720 ILCS 5/12—11 (West 1996)) and aggravated criminal sexual assault. 720 ILCS 5/12—14(a)(1) (West 1996). Defendant received concurrent prison terms of 12 years. The appellate court affirmed the convictions and sentence. 296 Ill. App. 3d 205. We subsequently granted defendant's petition for leave to appeal (177 Ill. 2d R. 315) and now affirm in part and reverse in part the judgment of the appellate court.

## BACKGROUND

The State's Attorney of Washington County filed a criminal information against defendant on December 21, 1995, charging defendant with one count of home invasion. The information alleged that defendant had knowingly entered the dwelling of the victim, his ex-wife, without authority and had intentionally caused injury to the victim by striking her in the head with a gun. On that same date, an arraignment was held at which defendant pled not guilty to the charge. The circuit court set bail at $500,000 and further ordered that defendant was to have no contact with the victim. Defendant, unable to post bond, remained in the custody of the sheriff of Washington County.

The circuit court held a preliminary hearing in the matter on December 27, 1995. At that proceeding, an investigator for the Washington County State's Attorney testified that he had interviewed the victim shortly after the occurrence at issue. She related to him that, on December 20, 1995, she had been asleep at her home between 7 and 7:30 p.m., when she was awakened by the sound of breaking glass. She arose to investigate and was eventually confronted by the defendant, who was armed with a shotgun. At first, defendant merely argued with the victim because he was upset that she had been seeing another man. As the argument escalated, defendant struck the victim in the chest with the butt of the

shotgun. Defendant then asked the victim to get him something to drink, and she went into the kitchen to comply. Defendant followed her, and another verbal altercation ensued. Defendant again beat the victim, this time on her head and face, with both his fists and the butt and barrel of the shotgun.

Defendant and the victim then returned to the dining room and tried to converse once more. At this time, defendant became remorseful and told the victim that he would allow her to go to the hospital, and he put the shotgun down on the floor. He later changed his mind and took the victim into a bedroom where he removed a knife that he had on his belt. He then told the victim to remove her clothing. The victim attempted to dissuade defendant and told him to put down the knife. The victim ultimately removed her clothes, and defendant performed an act of intercourse on her. Eventually, defendant brought her back out to the dining room area, where more talking and arguing ensued. Defendant left the victim's residence after she persuaded him to let her go and to leave the ammunition of his shotgun with her.

The investigator told the court that several pieces of physical evidence had been found at both the victim's home and defendant's residence, including bedsheets, clothing, and a 12-gauge pump shotgun. According to the investigator, the victim had admitted to him that she had sexual relations with another man earlier on the day in question.

The record reveals that the circuit court docketed the case for trial during the weeks of April 22 and April 29, 1996. On April 4, 1996, defendant requested a continuance in the matter for the funding of a mental health expert. Defense counsel told the court that he had explained to defendant that defendant had the right to be tried in the matter within 120 days of his arrest, that defendant's request would toll the statutory period, and

that, as a result of the request, defendant might not be tried until August. Defense counsel further stated that defendant "understands" these facts and "would agree to have this case continued to the August docket." Counsel then noted that "with the attended tolling of his rights there is another matter, and this is the State expressed to me this morning their inclination to add another offense—other Class X offenses—arising out of this incident."

The court then asked the State for its position with regard to the continuance. The assistant State's Attorney replied that he had no objection to the request. The court then explained to defendant, on the record, the effect that his request would have on his right to be tried within 120 days of his arrest, noting that the trial would be held during the week of August 19, 1996. Defendant stated that he understood, and the court granted the continuance.

The cause came before the court several weeks later for a hearing on the State's motion for discovery. Specifically, the State sought to have defendant produce a saliva sample for genetic testing purposes.

The State subsequently filed an amended criminal information in the case on July 26, 1996. The amended information contained the original home invasion charge as well as five additional charges of aggravated criminal sexual assault. Defendant moved to dismiss the criminal sexual assault charges, arguing that the State did not bring him to trial on those charges within 120 days of his arrest. According to defendant, the 120-day speedy-trial period began to run on December 21, 1995, the day of his arrest, because the State knew of the sexual assault charges at that time. The State maintained that the 120-day period did not apply to the criminal sexual assault charges because those charges were based on separate acts from the original home invasion charge. The State

also pointed out that a motion to sever was an option. The State further related that the DNA testing in the case had not been completed until June 1996. Prior to that time, none of the DNA samples taken from the victim's apartment matched either the victim or the defendant. The circuit court denied defendant's motion to dismiss the sexual assault charges.

On August 20, 1996, the circuit court conducted a stipulated bench trial in the matter. The parties stipulated that the victim, if called to testify, would testify that defendant broke into her home armed with a shotgun. He proceeded to argue with the victim, striking her about the head and face with the weapon. The victim would also testify that defendant committed several acts of nonconsensual intercourse on her. Based on the parties' presentation of the stipulated facts, the court found defendant guilty of home invasion and one count of aggravated criminal sexual assault. The court dismissed the remaining counts of aggravated criminal sexual assault. Subsequently, the court denied defendant's posttrial motion and sentenced defendant to concurrent prison terms of 12 years. Defendant appealed.

The appellate court affirmed. In so doing, the court held that defendant's speedy-trial rights were not violated because the sexual assault and home invasion charges arose from different acts and were not required to have been joined. Alternatively, the court held that defendant's 120-day term had been extended by the continuance that defendant had obtained from the circuit court. The appellate court also rejected defendant's request that he receive day-for-day good-conduct credit because the truth-in-sentencing law, under which he had been sentenced, violated the single subject clause of the Illinois Constitution.

## ANALYSIS

Speedy Trial

Defendant maintains that the State violated his statutory right to a speedy trial when the State delayed charging him with aggravated criminal sexual assault until July 26, 1996. According to defendant, the sexual assault charges clearly arose from the same set of facts as the home invasion charge. Moreover, defendant points out that the State knew at time of his arrest for the home invasion charge that the victim had claimed that defendant had sexually assaulted her, yet the State did not charge him with that offense until 217 days later. For these reasons, defendant believes that reversal of his conviction for aggravated criminal sexual assault is mandated on speedy-trial grounds.

The State responds that it did not violate defendant's statutory right to a speedy trial with respect to the aggravated criminal sexual assault charges because those charges were not required to have been joined with the home invasion charge. Thus, according to the State, the 120-day statutory period for the criminal sexual assault charges began to run on the date that the charges were brought, *i.e.*, July 26, 1996. The State insists that the speedy-trial act was not violated in this case because defendant was tried within 30 days of being charged with the assault.

As an initial matter, we note that the right to a speedy trial, guaranteed to a defendant under both the sixth amendment and the due process clause of the federal constitution (*Klopfer v. North Carolina*, 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988 (1967)), is fundamental. An additional statutory right can also be found in section 103—5 of the Code of Criminal Procedure of 1963, which specifies periods of time within which an accused must be brought to trial. See 725 ILCS 5/103—5 (West 1996). Under section 103—5(a), every person in custody in this

state for an alleged offense shall be tried within 120 days from the date the accused was taken into custody unless delay is occasioned by the accused. 725 ILCS 5/103—5(a) (West 1996). Section 103—5 implements the constitutional right to a speedy trial (*People v. Reimolds*, 92 Ill. 2d 101 (1982)), but the constitutional right and the statutory right are not coextensive (*People v. Jones*, 84 Ill. 2d 162 (1981)). Defendant does not raise any constitutional claims in this case; this appeal concerns only the extent of defendant's rights under the statute.

Defendant's argument is based upon a rule first announced by our appellate court in *People v. Williams*, 94 Ill. App. 3d 241 (1981). The court held that

"[w]here new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin *** is subject to the same statutory limitation that is applied to the original charges." *Williams*, 94 Ill. App. 3d at 248-49.

Defendant contends that, under this rule, it is immaterial whether the additional charges must be joined because the inquiry turns strictly on the State's knowledge at the time of the commencement of the prosecution and not on whether the charges are based on the same act for purposes of compulsory joinder, as the State insists.

Compulsory joinder requires that, in certain situations, the State bring multiple charges in a single prosecution unless the circuit court determines that the interests of justice require a separate trial. See 720 ILCS 5/3—3(c) (West 1996). The question in this case is whether the rule announced in *Williams* should be extended to situations in which the State is not required by statute to join the additional charge with the original charge. Contrary to defendant's contention, we believe that compulsory joinder principles are relevant to the issue of whether defendant's statutory right to a speedy

trial was violated in this case. We acknowledge that our appellate court has taken different views on this question (compare *People v. Hinkle*, 234 Ill. App. 3d 663, 667 (1992), with *People v. Crowe*, 195 Ill. App. 3d 212, 215-16 (1990)) and that defendant's position on appeal finds support in several opinions. We, of course, are not bound by opinions of the appellate court, particularly when they conflict with our own precedent. As we will explain below, we believe it unwise to so extend the *Williams* rule because it would result in the State having to join charges not otherwise mandated by the statute to be joined.

Although this court has never addressed the question presented in this appeal, we have had occasion to consider the *Williams* rule in the recent past. In *People v. Quigley*, 183 Ill. 2d 1 (1998), we emphasized the important interaction that exists between the speedy-trial provisions and the compulsory-joinder provision when additional charges are brought against a defendant who had been previously charged. See *Quigley*, 183 Ill. 2d at 12-13. We held, consistent with the opinion in *Williams*, that "[i]f the charges are required to be brought in a single prosecution, the speedy-trial period begins to run when the speedy-trial demand is filed, even if the State brings some of the charges at a later date." *People v. Quigley*, 183 Ill. 2d 1, 13 (1998).[1] Given the fact that this court in *Quigley* recognized, and in fact relied upon, the interplay between compulsory joinder principles and speedy-trial principles in holding that the *Williams* rule applies in cases of compulsory joinder, we cannot conclude that compulsory-joinder principles are irrelevant to the

---

[1]We note that, in this case, defendant was not required to file a speedy-trial demand because he was in custody throughout the proceedings. In such cases, a demand is unnecessary, as the 120-day period begins to run automatically upon incarceration. Compare 725 ILCS 5/103—5(a) (West 1996) with 725 ILCS 5/103—5(b) (West 1996). This distinction, however, does not affect our analysis.

question in this case. We therefore agree with the State the issue presented in this appeal turns upon the application of compulsory-joinder law.

Our compulsory-joinder statute provides that

"If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution *** if they are based on the same act." 720 ILCS 5/3—3(b) (West 1996).

Once a defendant has been prosecuted for an offense, the State is barred from prosecuting him or her for any other offense which, pursuant to section 3—3(b), should have been joined with the original prosecution. 720 ILCS 5/3— 4(b)(1) (West 1996). In enacting the compulsory-joinder provision, our legislature attempted to alleviate the fundamental unfairness that ensues when the State holds repeated trials for the same illegal conduct, a practice which had "troubled the conscience of the courts and the legislature." *People v. Golson*, 32 Ill. 2d 398, 411 (1965).

Nevertheless, the fact that multiple offenses arise from distinct, but related, acts in the course of a single incident is irrelevant for purposes of compulsory joinder. *People v. Mueller*, 109 Ill. 2d 378, 385 (1985) (and cases cited therein). Indeed, this court has acknowledged that "[t]here is no requirement of joinder where multiple offenses arise from a series of related acts." *Mueller*, 109 Ill. 2d at 385, citing *People v. Griffin*, 36 Ill. 2d 430, 433-34 (1967). This is so because the compulsory joinder provision was not "intended to cover the situation in which several offenses—either repeated violations of the same statutory provision or violations of different provisions—arise from a series of acts which are closely related with respect to the offender's single purpose or plan." Ill. Ann. Stat., ch. 38, par. 3—3, Committee Comments—1961 at 102 (Smith-Hurd 1972); see also *Mueller*, 109 Ill. 2d at 385 (same). Thus, independent, overt acts that constitute different offenses are not required to

be joined because they are not offenses "based on the same act." *Mueller*, 109 Ill. 2d at 385.

Accordingly, because the home invasion and sexual assault charges in this case were based on separate acts, the compulsory joinder statute did not require the State to prosecute both offenses in the same proceeding. During oral argument, defendant's attorney stated that while the charges in this case were not required to be joined, she believed that a piecemeal prosecution of defendant would have been unfair. We disagree. As our appellate court has held, "[t]here is no fundamental unfairness in prosecuting a defendant in separate trials for similar statutory violations based on separate and distinct acts." *People v. Thomann*, 197 Ill. App. 3d 516, 521 (1990). In our view, defendant is attempting to enlarge the reach of the compulsory-joinder statute by way of the speedy-trial statute. Under defendant's theory, the speedy-trial act would compel the State to join charges that are otherwise not mandated to be joined under our compulsory-joinder statute. We will not interpret the speedy-trial act in such a way that the plain language of the compulsory-joinder statute is overridden. Thus, because the State was not required to join the offenses in this case, there is no reason to apply the speedy-trial term applicable to the home invasion charge to the sexual assault charges. Nevertheless, we will examine whether the State's decision to permissively join these charges thwarted, in any way, the purposes behind the speedy-trial act.

In *People v. Stuckey*, 34 Ill. 2d 521 (1966), this court explained that the speedy-trial act operated to prevent the constitutional speedy-trial issue from arising in a case. The "evil intended to be prevented by the speedy trial provision is wrongful incarceration *** [and] is based upon the right of the individual to liberty." *People v. Garcia*, 65 Ill. App. 3d 472, 475 (1978), citing *People v. Kidd*, 357 Ill. 133 (1934). As our appellate court has

observed, the purpose of the 120-day rule is to guarantee a speedy trial and not "to open a new procedural loophole which defense counsel could unconscionably use to obstruct the ends of justice." *People v. George*, 71 Ill. App. 3d 932, 934 (1979).

Defendant here was incarcerated for the offense of home invasion from December 21, 1995, until the filing of the amended information on July 26, 1996. From July 26, 1996, until the date of his trial, August 20, 1996, defendant was incarcerated for both the offense of home invasion and the offense of criminal sexual assault. We fail to see how defendant's right to a speedy trial with respect to the sexual assault charges was violated when defendant was tried on those charges within 30 days of their being filed. We must emphasize that the bulk of defendant's pretrial incarceration in this case was due to defendant's inability to post bond for the home invasion charge. Stated differently, defendant suffered fewer than 30 days of pretrial incarceration with respect to the sexual assault charges. Under these facts, defendant simply cannot maintain that he was denied a speedy trial on the sexual assault charges.

The record demonstrates that the delay which caused defendant's trial to be postponed until August was occasioned in April, when defendant requested a continuance for the appointment of a mental health expert. The State had no role in causing the original April trial date to be continued until August. Defendant, however, argues that the April continuance cannot be used to extend the speedy-trial term for the sexual assault charges because those charges were not in existence at the time he sought that continuance. We agree. However, it is precisely because those charges were not in existence at that time that we cannot say, as a matter of law, that defendant's speedy-trial rights with respect to those charges were violated. Defendant received a speedy trial with respect

to the sexual assault charges. We must emphasize that had defendant not requested this continuance, his trial in April would have proceeded on the home invasion charge alone because the sexual assault charges had not been filed at that time. Moreover, if the original April trial date had not been delayed and trial had proceeded on the home invasion charge as scheduled, defendant still would have faced the prospect of being tried on the sexual assault charges sometime in the future because the charges were not subject to compulsory joinder. In light of these considerations, we hold that where the State chooses to join new charges after the filing of the original charges, the *Williams* rule is inapplicable.

That said, we believe, consistent with our opinion in *Quigley*, that the concerns that attend to the right to a speedy trial come into play in those cases where the later-filed charges are based on the "same act" as the original charges, *i.e.*, in cases where the charges must be brought in a single prosecution. In other words, had the sexual assault charges been required under section 3—3(b) to have been joined, we would not allow the State to circumvent the original speedy-trial term. The later date could not be used by the State to "restart" the speedy-trial period, and any delay occasioned by such a late filing would not be attributable to the defendant. The State would be required to bring defendant to trial on all of the charges within the original speedy-trial term or face dismissal of the new charges. In such cases, fairness dictates that those charges "relate back" to the date the original charges were filed.

For the foregoing reasons, the circuit court correctly denied defendant's motion to dismiss, on speedy-trial grounds, the aggravated criminal sexual assault charges.

Truth-in-Sentencing

Defendant also contended in the appellate court that Public Act 89—404, which created the truth-in-

sentencing law, was enacted by the General Assembly in violation of the single subject clause of the Illinois Constitution. Ill. Const. 1970, art. IV, § 8(d). Because defendant was sentenced under the truth-in-sentencing law, he contended that his sentence was void. Defendant sought an order for the appellate court mandating that he receive day-for-day good-conduct credit, as was provided in the statute in effect prior to the enactment of Public Act 89—404. See 730 ILCS 5/3—6—3 (West 1994). The appellate court denied defendant's request, holding that defendant could not assert such a challenge on direct appeal because the application of the laws was a matter outside the scope of the sentencing hearing. 296 Ill. App. 3d at 211.

The State concedes that the appellate court's resolution of this issue conflicts with this court's decision in *People v. Reedy*, 186 Ill. 2d 1 (1999). There, we held that defendants sentenced under the truth-in-sentencing provisions could challenge the enactment's constitutionality on direct appeal. *Reedy*, 186 Ill. 2d at 6-8. Moreover, in *Reedy*, we agreed that Public Act 89—404 was enacted in violation of the single subject rule and was therefore unconstitutional. We further held that Public Act 90—592 (Pub. Act 90—592, eff. June 19, 1998), applying to offenses committed on or after June 19, 1998, served to cure the effect that the former act's invalidation had on the truth-in-sentencing law. *Reedy*, 186 Ill. 2d at 17-18. The State concedes that because the offenses at issue in this case took place prior to June 19, 1998, defendant is entitled to day-for-day good-conduct credit against his sentence. We therefore modify the judgment in this case accordingly.

## CONCLUSION
In light of the above, the judgment of the appellate court is affirmed in part and reversed in part. Defendant's

convictions are affirmed, and the judgment of the circuit court of Washington County is affirmed as modified.

*Appellate court judgment affirmed in part
and reversed in part;
circuit court judgment affirmed as modified.*

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

The majority determines that the State's decision to "permissively join" the charges of aggravated criminal sexual assault to the original home invasion charge, some 217 days after defendant was taken into custody on the home invasion charge, did not thwart the purposes behind the speedy-trial act. I disagree.

Section 103—5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5(a) (West 1996)) implements the substantial right to a speedy trial guaranteed by the state and federal constitutions, and therefore must be liberally construed. Ill. Const. 1970, art. I, § 8; U.S. Const., amend. VI; *People v. Woolsey*, 139 Ill. 2d 157, 165 (1990); *People v. Reimolds*, 92 Ill. 2d 101, 106 (1982). Indeed, this court has held that the purpose of that section should not be avoided by technical evasions, such as dismissing and refiling the same charges. *People v. McAdrian*, 52 Ill. 2d 250, 255 (1972); *People v. Fosdick*, 36 Ill. 2d 524, 528 (1967); see also *Woolsey*, 139 Ill. 2d at 170-71. In this same spirit, the appellate court held, in *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981), that "[w]here new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges."

The majority declines to "extend the *Williams* rule" to cases where the charges are not subject to compulsory

joinder (189 Ill. 2d at 218), ignoring the fact that *Williams* itself is not a case where compulsory joinder was involved. Although the defendants in *Williams* were tried in a single prosecution for having committed, in sequence, an unlawful restraint, a kidnaping, an aggravated battery, a sexual assault, and then further aggravated batteries and sexual assaults against the victim, the State was not required to join the various offenses because they did not arise from the same act. See *People v. Mueller*, 109 Ill. 2d 378, 385 (1985). While the origins of the rule stated in *Williams* may indeed stem from the provisions of the compulsory joinder statute (see *People v. King*, 8 Ill. App. 3d 2, 5 (1972)), *Williams* focuses on knowledge by the State that new and additional charges arose from "the same facts as did the original charges" (*Williams*, 94 Ill. App. 3d at 248), rather than on whether "the several offenses *** are based on the same act," for compulsory joinder purposes (720 ILCS 5/3—3(b) (West 1996)). See *People v. Hinkle*, 234 Ill. App. 3d 663, 667-68 (1992). Therefore, the majority's refusal to apply the *Williams* rule to cases where compulsory joinder is not required is, in reality, a rejection of the decision in *Williams*.

This implicit overruling of *Williams* is not supported by this court's decision in *People v. Quigley*, 183 Ill. 2d 1 (1998), which cited the *Williams* rule with approval. The majority states that because *Quigley* recognized the interplay between compulsory joinder principles and speedy-trial principles in holding that the *Williams* rule applies in cases of compulsory joinder, compulsory joinder law must dictate the result in this case. *Quigley* mandates no such finding. While the majority correctly states that in *Quigley* this court relied upon the interaction between the compulsory joinder and speedy-trial principles, we did not have occasion to reach the scenario presented here, a speedy-trial violation arising from multiple charges which the State chose to try together, though it

was not required to do so. Thus, contrary to the majority's holding herein, *Quigley* does not preclude the finding that speedy-trial violations can also originate in non-compulsory-joinder situations if the State, with knowledge of the facts at the commencement of the prosecution, *chooses* to bring multiple charges in a single prosecution.

Here, as in *Williams*, while the State chose to try defendant for multiple offenses in a single prosecution, the State was not required to do so. I agree with the majority that had the State chosen to prosecute these offenses separately, they would not be subject to the same speedy-trial limitation. See 725 ILCS 5/103—5(e) (West 1996); *Quigley*, 183 Ill. 2d at 13-14. However, having known since the filing of the original home invasion charge that both that offense and the aggravated criminal sexual assault arose from "the same facts," and having elected to try both offenses in a single prosecution, the State may not seek to avoid the purpose of the speedy-trial statute through "technical evasion." See *People v. Lyles*, 106 Ill. 2d 373, 411-12 (1985) (it is the prosecutor's duty to safeguard the constitutional rights of all citizens, including the defendant's).

The majority argues that defendant was not denied a speedy trial on the sexual assault charges, as he was tried on those charges within 30 days of their being filed. Sadly, this ignores the reality of the situation, *i.e.*, that defendant had been in custody for over 200 days on a charge "aris[ing] from the same facts" as the sexual assault charges, that the State had known "these facts at the commencement of the prosecution," and that defendant had not contributed to any delay with regard to the new and additional charges. *Williams*, 94 Ill. App. 3d at 248-49. Because it had chosen to proceed on the home invasion charge alone, the State, and only the State, was responsible for the separation of charges and the long delay in filing the sexual assault charges. See *People v.*

*Williams*, 2 Ill. App. 3d 993 (1971) (upholding dismissal of new and additional attempted murder indictment based on same facts as original murder indictment, because defendant had been in custody for more than 120 days and was not responsible for any part of nine-month delay in filing the attempted murder indictment). Thus, to contend that defendant was tried on the sexual assault charges in a timely manner and that speedy trial considerations do not apply here is, in my opinion, patently wrong and tends to "circumvent the very protection the statute aimed to provide." *Williams*, 94 Ill. App. 3d at 249.

The majority also wrongly concludes that applying the *Williams* rule to cases like the one at bar would compel the State to join charges that are otherwise not mandated to be joined under the compulsory joinder statute. The State retains the power to decide whether to join related offenses or to try them separately. However, if the State *voluntarily* joins offenses in a single prosecution, it must adhere to the speedy-trial rule as if those offenses were subject to compulsory joinder.

In the case at bar, if the State incurred problems obtaining evidence necessary to the prosecution of the aggravated criminal sexual assault charges, the State could have avoided a speedy-trial violation by prosecuting defendant in separate cases, or by applying for an additional period of time in which to obtain this evidence, as was its prerogative under section 103—5(c). However, the State took no action, despite its continuing burden to take the necessary steps to bring about a prompt trial in conformance with the provisions of the speedy-trial act. See *Williams*, 94 Ill. App. 3d at 249. Thus, where only the State's tardiness in filing the new and additional charges of aggravated criminal sexual assault precluded commencement of prosecution on these charges within the original charge's speedy-trial term, the State violated

defendant's rights under section 103—5. Therefore, because the charges of aggravated criminal sexual assault should have been dismissed by the circuit court, I would vacate defendant's conviction and sentence for that offense. In all other respects, I concur.

JUSTICES HEIPLE and RATHJE join in this partial concurrence and partial dissent.