Filed 4/3/08            NO. 4-07-0197

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| ISIAH K. DAVIS, | ) | No. 06CF293 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael D. Clary, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

On May 30, 2006, the State charged Isiah K. Davis with armed robbery against Lou Ann St. Onge (count I) (720 ILCS 5/18-2 (2006)). On November 2, 2006, after Davis had been in custody for 157 days, the State amended the information to include a charge of armed robbery against James Peplow (count II) (720 ILCS 5/18-2 (2006)). The armed robbery against James arose from the same set of circumstances as the armed robbery against Lou Ann. That same day, Davis and two codefendants went to trial on both counts. Davis was subsequently convicted of both counts and sentenced to two nine-year terms, to run concurrently. Davis appeals his conviction for armed robbery against James, arguing that his counsel was ineffective for failing to move to dismiss count II based on a speedy-trial violation. We affirm.

I. BACKGROUND

A. Underlying Offense

The victims, James Peplow and Lou Ann St. Onge, lived together and were raising a young child together (Lou Ann's

biological daughter).  James and Lou Ann both worked at a Save-a-Lot grocery store in Danville, Illinois.  On May 26, 2006, James dropped Lou Ann's daughter off at the babysitter's house on his way to work.  Lou Ann was already at work, and she was set to get off of work earlier than James.  At approximately 6:30 p.m., Lou Ann's shift ended.

James and Lou Ann walked out to the parking lot together so that James could transfer Lou Ann's daughter's safety seat from his car to her car, as Lou Ann wanted to pick up her daughter from the babysitter's house on the way home from work.  James and Lou Ann had parked next to each other in the employee section of the parking lot.  Lou Ann sat in her car while James started to remove the safety seat from his car.  At that moment, two men came up from behind James and demanded money.

At first, James did nothing because he was stunned and did not immediately process what was happening.  The taller of the two men lifted his shirt and revealed a pearl-handled gun.  James gave the man who was not armed with the gun a $5 bill from his pocket.  After James gave the men the $5 bill, Lou Ann got out of her car.  Lou Ann testified that she had also seen the gun, and was scared, but did not want anything to happen to James.  Lou Ann approached the men and said, "What's going on?"

In response, the two men demanded money from Lou Ann.  Lou Ann gave them a $1 bill.  The two men searched Lou Ann's pockets but could not find any additional money.  Then, the men searched James, taking $32 from his wallet, in the form of a $20

bill, a $10 bill, and two $1 bills.  In total, the men took $38 from James and Lou Ann, in the form of a $20 bill, a $10 bill, a $5 bill, and three $1 bills.

Then, a green Ford Taurus drove by the scene and the two men jumped in the car and drove away.  James took note of the Taurus's license plate, ran inside the store, wrote the plate number on his hand, and called the police.  The police arrived in less than five minutes.  The whole episode, from the time James and Lou Ann left the store to the time the police arrived, took approximately 10 minutes.

Soon after, Indiana police pulled over a vehicle matching the description of the getaway car.  The Indiana police arrested the three occupants inside the vehicle, including Davis, who was in the backseat.  The other two men were later identified as Andrew Guice and Donald Burnett.  Davis had $38 on his person in the same denominations that were taken from James and Lou Ann. The police did not find a gun during the search of the vehicle, but they did find a large, pearl-handled knife.

After his arrest, the police fingerprinted Davis and found that the fingerprints matched an "Isiah Jones," not an "Isiah Davis."  James and Lou Ann were then brought into the police station to make identifications through a closed circuit television.  Both James and Lou Ann identified codefendant Andrew Guice as the man with the gun.  James also identified codefendant Donald Burnett, but he was not sure whether Burnett had been the other man on foot or whether Burnett had driven the getaway car.

- 3 -

Neither James nor Lou Ann identified Davis. At trial, James thought Burnett had been the unarmed man on foot.

### B. Procedure Impacting Speedy-Trial Requirements

On May 30, 2006, the State charged Davis with armed robbery against Lou Ann and brought Davis into custody. Trial was originally set for July 31, 2006. On July 31, 2006, Davis moved to continue. The trial court granted the motion over the State's objection. Trial was reset for September 25, 2006. On that date, the State moved to continue and the trial court granted the State's motion over Davis's objection. Further proceedings were reset for October 30, 2006. On that date, the State moved to amend the complaint to include Davis's alias, "Isiah Jones." The parties then selected the jury. Trial was set for November 2, 2006.

On November 2, 2006, after Davis had been in custody for 157 days, the State again moved to amend the complaint, this time seeking to add a second count of armed robbery regarding the offense against James. The State noted that, for some reason, it had originally only filed one count of armed robbery (as pertaining to Lou Ann). The State was not sure why it originally did not file another count as pertaining to James, as the crimes were part of the same incident. The defense objected, arguing that Davis and codefendants would be prejudiced by the addition of count II because the jury had already been informed in the statement of the case that there was only one count. The trial court noted that the jury had already been informed that James

would be a witness and all of the jurors indicated that they were unfamiliar with James. Therefore, the trial court did not believe Davis would be prejudiced by the addition of count II and allowed the State to amend. The trial court gave defense counsel the option of continuing the trial date so that he could have more time to prepare to defend against count II, but defense counsel said he and his clients were ready to go to trial that day.

Following a joint jury trial, Davis was convicted of both counts and was sentenced as stated. This appeal followed.

## II. ANALYSIS

One hundred and fifty-seven days elapsed from the time Davis was taken into custody (May 30, 2006) until his trial began (November 2, 2006). As pertains to count I, both parties agree that only 101 days counted toward the speedy-trial period because Davis's requested continuance tolled the speedy-trial clock from July 31, 2006, to September 25, 2006. However, as pertains to count II, Davis argues that all 157 days should be counted toward the speedy-trial period and that his trial counsel was ineffective for not moving to dismiss count II based on a violation of the speedy-trial statute.

Every person in custody in Illinois for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody. 725 ILCS 5/103-5(a) (West 2006). Delays occasioned by the defendant do not count toward the 120-day speedy-trial period. 725 ILCS

- 5 -

5/103-5(a) (West 2006).  In support of his argument that defendant was not tried as to count II within the 120-day speedy-trial period, Davis relies on People v. Williams, 94 Ill. App. 3d 241, 248-49, 418 N.E.2d 840, 846 (1981), which first set forth the rule regarding speedy-trial considerations on later-filed charges.  The Williams court held:

> "Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges.  Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained."  (Emphasis added.)  Williams, 94 Ill. App. 3d at 248-49, 418 N.E.2d at 846.

However, the Williams rule does not apply to situations in which the State is not required to join the additional and original charges in a single prosecution under the principles of compulsory joinder.  People v. Gooden, 189 Ill. 2d 209, 217-18,

- 6 -

725 N.E.2d 1248, 1253 (2000) (involving charges of home invasion and aggravated criminal sexual assault). The <u>Gooden</u> court reasoned that if the <u>Williams</u> rule were extended to situations where the State would not otherwise be required to join the two charges under the compulsory-joinder statute (720 ILCS 5/3-3 (West 2006)), the speedy-trial act (725 ILCS 5/103-5 (West 2006)) could improperly compel the State to join charges. <u>Gooden</u>, 189 Ill. 2d at 220, 725 N.E.2d at 1254. A defendant should not be permitted to enlarge the reach of the compulsory-joinder statute by means of the speedy-trial act. <u>Gooden</u>, 189 Ill. 2d at 220, 725 N.E.2d at 1254.

The compulsory-joinder statute states that if several offenses of the defendant are known to the prosecuting officer at the time of commencing prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution <u>if</u> they are based on the same <u>act</u> (unless the court determines that it is in the interest of justice to try one or more of the charges separately). 720 ILCS 5/3-3(b) (West 2006). An "act" for purposes of section 3-3 of the Criminal Code of 1961 (720 ILCS 5/3-3(b) (West 2006)) is "'any overt or outward manifestation that will support a separate offense.'" <u>People v. Davis</u>, 328 Ill. App. 3d 411, 414, 766 N.E.2d 277, 280 (2002), quoting <u>People v. Crespo</u>, 203 Ill. 2d 335, 341, 788 N.E.2d 1117, 1120 (2001).

The purpose of section 3-3 is to preclude successive prosecutions where more than one person was injured by a single

act by the accused, such as setting off an explosive. People v. Mueller, 109 Ill. 2d 378, 386, 488 N.E.2d 523, 526 (1985). Under the compulsory-joinder statute, whether a series of acts are "related," or might be considered part of the same "conduct," is irrelevant. See Mueller, 109 Ill. 2d at 385, 488 N.E.2d at 526; see also People v. Limauge, 89 Ill. App. 2d 307, 231 N.E.2d 599 (1967) (though related, prosecutions for driving while license revoked and for reckless homicide did not constitute same "act" so as to require joinder). "'Section 3-3 is not intended to cover the situation in which several offenses *** arise from a series of acts which are closely related with respect to the offender's single purpose or plan.<" Mueller, 109 Ill. 2d at 385-86, 488 N.E.2d at 526, quoting Ill. Ann. Stat., ch. 38, par. 3-3, Committee Comments, at 202 (Smith-Hurd 1972). In fact, the drafters considered and rejected an earlier version of section 3-3 which would have required a single prosecution when multiple offenses arose from the "conduct," as opposed to the same "act." Mueller, 109 Ill. 2d at 386, 488 N.E.2d at 526. "Conduct" may be defined as a "series of acts." Mueller, 109 Ill. 2d at 386, 488 N.E.2d at 526.

It seems as though the Gooden court narrowed the scope of the Williams rule. The Williams rule imposed the original statutory limitations period to additional charges arising from the "same facts." However, the Gooden court imposed the original statutory limitations period to additional charges that are required to be joined to the original charge, i.e., those arising

from the same "act."

To prevail on an ineffective-assistance claim, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and that, (2) but for counsel's unprofessional errors, the result of the proceedings would have been different.  People v. Reid, 179 Ill. 2d 297, 310, 688 N.E.2d 1156, 1162 (1997), citing Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  It has been held that trial counsel's failure to move for a speedy-trial discharge of new and additional charges will constitute ineffective assistance where there was at least a reasonable probability that such a motion would have been granted.  See People v. Davis, 373 Ill. App. 3d 351, 354, 869 N.E.2d 339, 341 (2007); see also People v. Callahan, 334 Ill. App. 3d 636, 641, 644-45, 778 N.E.2d 737, 742, 745 (2002).

Hence, we must determine whether there was a reasonable probability that a motion for a speedy-trial discharge of count II would have been granted had such a motion been made.  This issue turns on whether the armed robbery of James (count II) is based on the same "act" as the armed robbery of Lou Ann (count I).  If, on the other hand, the two counts arose from two distinct acts, the State would not be required to prosecute the two counts in the same prosecution pursuant to the compulsory joinder statute, and the Williams rule upon which Davis relies would not apply.  Gooden, 189 Ill. 2d at 217-18, 725 N.E.2d at 1253; 720 ILCS 5/3-3 (West 2006).

- 9 -

What constitutes an "act" under the statute (*i.e.*, any overt or outward manifestation that will support a separate offense) is not always clear-cut. For example, courts have held that the rapid firing of successive shots from a single location is a single "act" for purposes of the compulsory-joinder statute, even if there are multiple victims. Davis, 328 Ill. App. 3d at 414, 766 N.E.2d at 80. However, other courts have held that armed robberies against multiple victims, though contemporaneous in time, may constitute separate acts. See People v. Smith, 42 Ill. App. 3d 109, 115, 355 N.E.2d 601, 606 (1976) (where defendant and his accomplice walked into a barbershop and committed armed robbery against two of the three people inside); People v. Robinson, 41 Ill. App. 3d 526, 530-31, 354 N.E.2d 117, 121 (1976); People v. Boyce, 41 Ill. App. 3d 53, 61, 353 N.E.2d 287, 293 (1976) (in *dicta*, stating that the nearly simultaneous armed robbery of two people in the same car constituted two "closely related" acts).

Here, the perpetrators first committed an act of armed robbery against James. Then, when Lou Ann got out of her car, approached the defendants, and asked what was going on, the defendants could have chosen to turn and run, or otherwise change their course of action. Perhaps the defendants might have realized that their actions were morally wrong and futile, or that there were too many witnesses. Instead, the defendants chose to commit a second act of armed robbery. Under these circumstances, we find two different acts were committed. As

- 10 -

such, any motion to dismiss the later-filed count II on the basis of a speedy-trial violation would not have been successful and, therefore, Davis's ineffective-assistance claim fails.

### III. CONCLUSION

For the aforementioned reasons, we affirm the trial court's judgment.  As part of our judgment, we grant the State its statutory assessment of $50 against defendant as costs of this appeal.

Affirmed.

McCULLOUGH and TURNER, JJ., concur.